303 P.2d 286

**Ruth CAFFALL, Plaintiff and Respondent,**

**v.**

**Vern CAFFALL, Defendant and Appellant.**

**No. 8447.**

Supreme Court of Utah.

Nov. 7, 1956.

408

Raymond R. Brady, Dean E. Flanders, Salt Lake City, for appellant.

J. Grant Iverson, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from a judgment denying defendant's petition to vacate and set aside the decree of divorce granted plaintiff. The parties intermarried July 22, 1936, at Pocatello, Idaho. Defendant admits that he was not free to enter into the marriage, having a wife living from whom he was not divorced.

The parties continued to live together as husband and wife until plaintiff filed suit for divorce. On October 22, 1945, an interlocutory decree of divorce was granted plaintiff. Defendant was served but made no appearance and his default was entered. The complaint alleged the marriage of the parties and that they had been ever since said marriage husband and wife. It alleged that two children had been born as issue of the marriage. The complaint prayed for dissolution of the marriage, award of the minor children to plaintiff and asked for alimony, support money and attorney's fees. The district court upon the sworn testimony of plaintiff granted an interlocutory decree.

On June 30, 1954, defendant filed a petition to set aside the decree of divorce granted October 22, 1945. The district court denied defendant's petition.

Defendant contends that the district court was without jurisdiction to grant the divorce for the reason that the court had no jurisdiction of the subject matter since no legal marital status existed.

It would be a travesty on justice if the defendant could now say that because he was not legally married he cannot be held for the support of his minor children. There would seem to be available other remedies for the protection of the children of such a person. Probably he could be held under our "Bastardy Statute"[1] and for wilful refusal to provide for the support of his minor children, but we think it unnecessary to require resort to such proceedings.

A fraud was perpetrated on the court by defendant. He knowingly facilitated and participated therein by not resisting plaintiff's application for divorce with full knowledge that the parties were not legally married. If estoppel may be applied against defendant to protect the minor children of plaintiff and defendant, equity would suggest that it be done.

In the Oklahoma case of Cummings v. Huddleston[2] it is disclosed that the plaintiff and one Oda Cummings were married. Plaintiff was inducted into the army and during his military service his wife com-

1. 77-60-1—77-60-16, U.C.A.1953.

2. 99 Okl. 195, 226 P. 104, 105.

menced an action for divorce. On his return home he was advised that his wife had secured a divorce. Plaintiff checked the court records and found that a divorce decree had been granted his wife. Relying on the decree of divorce, plaintiff remarried. His former wife died and he commenced this action to vacate and set aside the decree of divorce. The trial court sustained a demurrer to the evidence of plaintiff and rendered judgment against him. The Supreme Court of Oklahoma observed:

"Conceding that plaintiff's contention that the judgment in the divorce action was void for want of jurisdiction of his person, *do the facts shown by the record in this case entitle plaintiff to any relief from that decree?* After being fully advised and informed as to the existence of the decree, *he made no objection to its validity, but availed himself of the privilege thereby conferred and contracted a second marriage* within about nine months after learning that the decree had been entered. After contracting this second marriage, he continued to live with his second wife, raising no question as to the validity of the decree until after the death of his first wife, and then comes in with a petition to vacate the decree in order that he may inherit a half interest with his minor child in the allotment of the dead woman.

"If there were no established rule of estoppel in such cases, this would be a most excellent proceeding in which to establish one. However, the rule is well and generally settled that one who accepts the benefits and privileges of a divorce decree by a remarriage, even though the decree be void for want of jurisdiction, is estopped from thereafter assailing such decree. [Citing cases.] And the reason for this rule is obvious. Society at large is interested in the maintenance of the marriage relation and in the faithful discharge of the duties and obligations incident thereto. But after those relations have been severed by judicial decree, and that decree fully acquiesced in by the immediate parties with full knowledge thereof, society has no further interest in the property rights of the parties. They are then subject to the same rules of law which govern others, and the rule of estoppel is one of these. After the death of Oda Cummings, plaintiff's only reason for assailing the decree of divorce could be to establish property rights resulting from his marriage with her. These rights he estopped and precluded himself from asserting by acquiescing in the decree with full knowledge thereof and by contracting a second marriage during Oda's lifetime." (Emphasis added.)

It is quite apparent in this case that defendant's only reason for assailing the decree of divorce was to save himself from the obligation for support money provided for in the decree.

In the case of Jenkins v. Jenkins [3] the action was for divorce. It was alleged in the complaint and admitted in the answer that the parties intermarried on July 13, 1941, and were man and wife. The defendant joined issue as to the ground for divorce. At the trial it developed that plaintiff at the time she married defendant had a husband living from whom an interlocutory decree of divorce had been granted but which decree had not become final. The trial court held that the purported marriage was void but did proceed to determine the rights of the parties in certain property which had been accumulated by them while living together. The court also made provision for the care and custody of the minor child born as issue of the purported marriage and allowed costs and attorney's fee. On appeal we sent the case back with instructions to fix the proper allowance as attorney's fee only for bringing the action to secure support for the minor child and in all other respects the case was affirmed.

Had the district court been advised in the hearing of the divorce action in this case that the marriage was void because one or both of the parties had a spouse living from whom no legal divorce had been obtained, the court could have entered a decree of annulment and would probably have proceeded to determine the proper division of the property and provided for the care, custody and support of the minor children.

It cannot be doubted that people who are not legally married should not live together as husband and wife, and the court should lend its aid to terminating such illegal relationship. It is true that the court here had no jurisdiction of the subject matter since there had been no legal marriage; but the parties to this action lived together as husband and wife for nine years, became the parents of two children and held out to the world that their illicit conduct had the sanction of law and morals. Not only did defendant know that he was not free to enter into a valid marriage with plaintiff at the time of their void marriage, but he knew when plaintiff filed her action for divorce that there had been no legal marriage and that the allegations of plaintiff's complaint constituted a fraud on the court. Nevertheless, defendant having been served, and with full knowledge of the fraud being perpetrated on the court, permitted his default to be entered and permitted the court to enter a decree based on false allegations by plaintiff which were acquiesced in by defendant.

Defendant waited more than nine years after the entry of the interlocutory decree

3. 107 Utah 239, 153 P.2d 262.

and after his remarriage to a third party, and then filed his petition to vacate the decree in order to be relieved of a judgment entered for plaintiff in May, 1952, in the amount of $675, for accrued and unpaid support money, and also for support money in the amount of $1,795. accrued since May, 1952.

We are of the opinion that the trial court properly denied defendant's petition to vacate the decree of divorce.

Were we to hold that estoppel will not lie here, we would be disposed to return the case to the district court with instruction to enter a decree of annulment and make a proper division of property, together with a reasonable award to reimburse plaintiff for the maintenance and support of the minor children since the entry of the decree of divorce in October, 1945. It is undisputed that defendant made some of the payments for support money under the decree he now assails.

We are of the opinion that equity has been done by the decree of October, 1945, and the ruling of the district court in refusing to set the decree aside.

Judgment affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (dissenting in part and concurring in result).

I neither agree nor disagree with the authorities cited in the main opinion and their application to the facts of this case. However, I disagree with the conclusion of the main opinion to the effect that the court had no jurisdiction of the subject matter in this case.

I concur in the result, but on other grounds. Looking at the facts in a light most favorable to plaintiff and sustaining the trial court if there are facts justifying his decision, I am convinced that the decision should be affirmed.

The plaintiff testified that she sought out counsel to obtain an annulment of her marriage to Bradford, which would tend to support the contention and the fact that she was not married to him and thus was free to marry Caffall. Caffall said he had no positive evidence that Mrs. Caffall was a married woman at the time he married her. He sent a detective to Evanston, Wyoming, to determine this fact, who returned with a marriage certificate showing a purported prior marriage by Mrs. Caffall in October, 1935, but for aught this record discloses, her former husband or purported husband may have obtained a divorce or an annulment from her during the nine months between the marriage or purported marriage to him and that to defendant here. Caffall testified further that he was divorced from his former wife in 1934 or 1935, and when asked if his divorce was not final at the time he married Mrs. Caffall, he replied

that he thought it was but wouldn't say for sure. All of this evidence pointed to the fact that Mrs. Caffall may not have been a married woman at the time Mr. Caffall married her, and he not a married man at that time. It is my opinion that the defendant, in attacking the previous judgment of some nine years before, did not sustain his burden of proof of lack of jurisdiction, which proof is demanded by many authorities to be of a clear and convincing nature. I believe that the court was correct in concluding that defendant had not sustained such burden,—and that it was correct even though arrived at by a preponderance of the evidence.