STATE of Utah, DEPARTMENT OF SO-
CIAL SERVICES, Plaintiff
and Appellee,

v.

Daniel S. VIJIL, Defendant
and Appellant.

No. 20111.

Supreme Court of Utah.

Aug. 17, 1989.

Steven Boos, Mexican Hat, for defendant and appellant.

David L. Wilkinson, Mark E. Wainwright, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Daniel S. Vijil appeals from the denial of his motion to vacate the docketed award in the District Court for the Seventh Judicial District that served as the basis for the issuance of a writ of garnishment. The award was in favor of the Utah Department of Social Services ("DSS") and was for amounts expended by the State of Utah to support Vijil's minor children. Vijil claims that the district court erred in exercising subject matter and personal jurisdiction. We find that DSS did not meet its burden of showing that the trial court had subject matter jurisdiction over Vijil; there-

fore, we reverse the district court's denial of the motion to vacate.

Vijil is an enrolled member of the Navajo Tribe living in Aneth, San Juan County, Utah, a town entirely within the boundaries of the Navajo Tribal Reservation. Vijil is the father of three minor children who are in the custody of his ex-wife. DSS made payments to his ex-wife for the support of these children during the months of November and December of 1983. It then sent Vijil a document entitled "Notice of Support Debt," seeking recovery from Vijil of the monies spent for the children's support. This notice was sent pursuant to section 78–45b–5 of the Code, which provides in pertinent part:

(1) In the absence of a court order, the director [of DSS] may issue a notice of a support debt accrued or accruing based upon the furnishing of support by the department for the benefit of any dependent child. That notice shall include a statement of the support debt accrued or accruing, computable on the basis of the amount of assistance paid or to be paid, a statement of the name of the recipient and the name of the minor child for whom assistance is being provided, a demand for immediate payment of the support debt or in the alternative for a written answer from that person to the department setting forth any claimed defenses to liability, and requesting a hearing thereon, and a statement that if neither answer nor full payment are received within twenty days from the date of service the department may assess and determine that support debt and that, subsequent thereto, the property of that person shall be subject to appropri-

ate collection action including, but not limited to, execution upon liens, wage assignments, attachment, and garnishment. This notice shall be served upon the alleged responsible parent in the manner prescribed for service of notices under § 78–45b–4.

Utah Code Ann. § 78–45b–5(1) (Supp.1975) (repealed 1988).

Although the notice of support debt informed Vijil that he was entitled to file a written answer to the notice and to request a hearing on the matter, he did neither. In the absence of any response from Vijil, DSS entered an award against him for $724 on March 6, 1984, representing his support obligation. This was done pursuant to section 78–45b–5(3) of the Code.[1] DSS then had this award docketed by filing an abstract of the award with the clerk of the district court in San Juan County, pursuant to the provisions of section 78–45b–9.[2] Under this section, once docketed, the award then became a lien upon the real and personal property of Vijil located in San Juan County and could be collected in the same manner as a lien resulting from a judgment of the district court. *Id.*

In an effort to collect on its lien, DSS obtained a writ of garnishment from the district court and served it on Vijil's employer. In response to the writ, Vijil entered a special appearance to challenge jurisdiction. Vijil filed a motion under Utah Rule of Civil Procedure 60(b) to vacate the docketing of the default award and a separate motion to quash the writ of garnishment. In support of the motions, Vijil filed a memorandum and an affidavit. The affidavit stated only that Vijil and his children were enrolled members of the Navajo tribe

---

**1.** Section 78–45b–5(3) reads:

If payment is not received as demanded under Subsection (1) and no written answer is filed within twenty days from the date of service, the department may proceed to assess and determine that support debt and, at any time thereafter, may proceed with appropriate collection actions as provided in that subsection. Utah Code Ann. § 78–45b–5(3) (Supp.1975) (repealed 1988).

**2.** Section 78–45b–9 reads:

(1) an abstract of any final order may be filed in the office of the clerk of the district court

of any county in the state, and must be docketed in the judgment docket of the district court thereof.... When so filed and docketed the award shall constitute a lien from the time of such docketing upon the real and personal property of the obligor situated in that county, for a period of eight years from the date of the award unless previously satisfied.

Utah Code Ann. § 78–45b–9 (1977) (repealed 1988) (for current comparable provision see Utah Code Ann. § 62A–11–311 (Supp.1989)).

and that Vijil resided in Aneth, a town located on the Navajo Tribal Reservation. The district court denied the motion to vacate but did not rule on the motion to quash the writ of garnishment.

In denying the motion to vacate, the court stated that the Vijil children's receipt of support from Utah showed that the courts of the State of Utah had "jurisdiction over the subject matter," and the fact that Vijil resides on the reservation does not "deprive [the state] of jurisdiction of his person." The court also noted that it could not "automatically rule that no member of the Navajo tribe is subject to the jurisdiction of the Courts of the State of Utah merely because of membership in the tribe." Vijil appeals from this ruling.

▮▮▮▮▮ Vijil phrases the question on appeal as whether the court has jurisdiction to enter the judgment against him. We initially note the applicable standard of review. A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion. *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986); *Russell v. Martell*, 681 P.2d 1193, 1194 (Utah 1984); *Baker v. Western Sur. Co.*, 757 P.2d 878, 881 (Utah Ct.App.1988). However, when a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without denying due process to the one against whom it runs. *See In re Marriage of Stroud*, 631 P.2d 168, 170 n. 5 (Colo.1981); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862 (1973). Therefore, the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court. *See Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989); *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988).

Moving on to Vijil's claims, his jurisdictional challenges are directed to both subject matter and personal jurisdiction over him. Subject matter jurisdiction is the authority and competency of the court to decide the case. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (1969). Personal jurisdiction, on the other hand, is the court's ability to exercise its power over a person for the purposes of adjudicating his or her rights and liabilities. *Id.* A lack of either is fatal to a court's authority to decide a case with respect to a particular litigant.

We address only Vijil's challenge to the court's finding of subject matter jurisdiction. Because we conclude that subject matter jurisdiction was not shown, we do not consider the separate question of personal jurisdiction. Vijil argues that the assertion of subject matter jurisdiction by the court in this case conflicts with the jurisdiction of the Navajo Tribe, but he advanced no facts in the district court to support that assertion. The United States Supreme Court has established two tests to be used in such situations to determine whether the courts of a state may assert jurisdiction. *See* Lytle, *The Supreme Court, Tribal Sovereignty, and Continuing Problems of State Encroachment into Indian Country*, 8 Am.Indian L.Rev. 65, 72–74 (1980); Note, *Indian Sovereignty: Confusion Prevails—California v. Cabazon Band of Mission Indians*, 107 S.Ct. 1083 (1987), 63 Wash.L.Rev. 169, 171–73 (1988). The first is the preemption test, under which the question is whether a federal law or treaty exists that sanctions or prohibits any interference with tribal self-government that results from the state action. *See McClanahan v. State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The second is the sovereignty infringement test, under which the question is "absent governing Acts of Congress ... whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). More recent Supreme Court cases have elaborated on these tests. *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (applying and developing tests in context of state's attempt to apply its laws to hunting and fishing by non-Indians on reservation); *Ramah Navajo School Bd. v. Bureau of*

*Revenue,* 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982) (applying and developing tests in context of state taxation of reservation sales to non-Indians); *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (applying and developing preemption test in context of state's attempt to apply its motor carrier license and use fuel taxes to non-Indian logging company on reservation).

In the present case, however, given the paucity of the factual record, we cannot determine which test should apply, much less what the outcome would be. The record created before the district court reveals no evidence pertinent to the existence of subject matter jurisdiction other than that Vijil's ex-wife received child support from DSS for the benefit of the children, that Vijil and his children are members of the tribe, and that he is a resident of the reservation. Based on the children's receipt of support, the court found that there were sufficient contacts with the state to give the court subject matter jurisdiction. But the district court's exclusive reliance on the contacts between Vijil's children and the state to determine the question of subject matter jurisdiction was insufficient as a matter of law; under neither of the tests can the issue be decided by reference to contacts with the state alone. On the other hand, the evidence is also insufficient to permit a determination that subject matter jurisdiction does not exist.

Because the facts before the district court were not sufficient to show the presence or absence of subject matter jurisdiction, the question of whether the district court should be affirmed turns on which party had the burden to prove the presence or absence of jurisdiction, for whoever had the burden did not carry it and must lose.

 When a judgment, including a default judgment, has been entered by a court of general jurisdiction, the law presumes that jurisdiction exists, and the burden is on the party attacking jurisdiction to prove its absence. *See* 46 Am.Jur.2d *Judgments* § 34 (1969); *see also Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 342,

85 L.Ed. 278 (1940); *Coshatt v. Calmac Mfg. Corp.,* 124 Ariz. 177, 178, 602 P.2d 845, 846 (Ariz.Ct.App.1979). This presumption is based at least partially on necessity. *See Watson v. Jones,* 41 Fla. 241, 25 So. 678, 683 (Fla.1899). However, a presumption of jurisdiction is not generally accorded judgments, default or otherwise, entered by courts of limited jurisdiction. 46 Am.Jur.2d *Judgments* § 34 (1969). When such judgments are attacked, the burden is on the proponent of the judgment to show that it was jurisdictionally proper. *Id.; see, e.g., Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974) (federal court as court of limited jurisdiction lacks jurisdiction until it has been demonstrated); *Kirkland Masonry, Inc. v. Comm'r of Internal Revenue,* 614 F.2d 532 (5th Cir. 1980).

The distinction between the presumption attaching to judgments of courts of general and limited jurisdiction is based on the differing nature of those courts. Courts of limited jurisdiction, among them federal courts, are empowered to hear only certain cases. Courts of general jurisdiction have few such limits. Although there is a danger that a court of general jurisdiction will seek to decide a case in which it lacks jurisdiction, the general judgment is that a greater risk exists that a court of limited jurisdiction will assert jurisdiction where none is warranted. This additional danger of entertaining cases not within the court's statutory or constitutional jurisdiction is viewed as overcoming the necessity rationale underlying the presumption accorded a court of general jurisdiction and has resulted in the development of a presumption that a court of limited jurisdiction lacks jurisdiction until it has been demonstrated. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3522 (1984). It is essentially a function of balancing necessity against risk of mistake.

The question in the present case is whether the default award entered by DSS, once docketed with the clerk of the district court, and enforced as a judgment in San Juan County by that court carries with it a presumption of jurisdictional correctness as

would any other judgment of a district court. If a presumption of jurisdiction exists, Vijil's minimal showing in support of his motion to vacate was not enough to overcome that presumption. On the other hand, if no such presumption exists, DSS's failure to make a showing that the court had subject matter jurisdiction requires that we reverse the district court. For the reasons set forth below, we find that no such presumption exists.

We have located no Utah decision that definitively answers the question of whether awards entered by state agencies through administrative proceedings and then filed with the district court clerk for enforcement as judgments are entitled to a presumption of jurisdictional correctness. We conclude, however, that such awards should not be entitled to a presumption of jurisdictional correctness. Given the limited nature of the authority of the administrative tribunal to enter an award, we think an award such as that entered here by DSS should be viewed as analogous to a judgment entered by a court of limited jurisdiction. And that characterization of the award does not change upon docketing the award with the district court clerk. Any agency entering such awards and then seeking to use the coercive power of a court of general jurisdiction to enforce them as judgments should at least be required, upon challenge, to demonstrate that the court does, in fact, have jurisdiction over the subject matter in dispute. Under that standard, the district court here should have granted the motion to vacate the docketing of the award and the motion to quash the writ of garnishment. Vijil entered a special appearance and challenged jurisdiction, yet DSS simply stood on the award, contending that Vijil had not shown that jurisdiction did not exist. This was not enough.

Vijil has brought to the attention of this Court a number of facts relevant to the subject matter jurisdictional questions, as well as the personal jurisdictional question we do not reach. These facts, which apparently were not before the district court, include the fact that he and his wife were granted a decree of divorce by a Navajo Tribal Court, that the decree contained provisions for child support, and that the tribal court retained continuing jurisdiction over the parties. Because none of this was before the court below, we do not consider it in our disposition of the matter.

However, it is noteworthy that wholly apart from whatever impact such facts might have on a determination of the jurisdictional questions, if the tribal court does have jurisdiction over Vijil and his ex-wife for purposes of determining child support, DSS proceeded against Vijil under the wrong statutory provision. DSS acted under section 78–45b–5 of the Code, which provides for a notice of support debt to be issued "[i]n the absence of a court order." Utah Code Ann. § 78–45b–5(1) (Supp.1975) (repealed 1988). By proceeding under this provision, DSS was able to "assess and determine" the support debt on its own. Utah Code Ann. § 78–45b–5(3) (1975) (repealed 1988). But if there is an existing court order from the Navajo court providing for child support, DSS could not redetermine a support obligation through an administrative proceeding. *Karren v. State Dep't of Social Servs.*, 716 P.2d 810 (Utah 1986); *Starks v. State Dep't of Social Servs.*, 750 P.2d 199 (Utah Ct.App. 1988); *see also* Utah Code Ann. § 78–45b–20 (1975) (repealed 1988) ("If any order pursuant to this act is, or becomes, in conflict with any order of a court of competent jurisdiction, to the extent of such conflict the court order shall govern."). Assuming that the Navajo court has continuing jurisdiction over this matter, DSS should have proceeded under section 78–45b–4 of the Code, providing for recovery of a support debt "according to the terms of the court order." Utah Code Ann. § 78–45b–4(3) (1977) (repealed 1988).[3]

---

**3.** Sections 78–45b–20 and 78–45b–4 were repealed in 1988 and replaced with sections 62A–11–324 and 62A–11–306, respectively. These provisions were then repealed in the 1989 legislative session and section 62A–11–304.2 was enacted. It provides, *inter alia*, that DSS may modify court orders concerning child support. We do not purport to address the question of

DSS did not offer any proof sufficient to demonstrate that subject matter jurisdiction existed. Because no presumption of jurisdictional correctness attaches to the default award, this omission was fatal. We reverse the district court and direct that Vijil's motion to vacate the docketed award be granted. Of necessity, this will require that the writ of garnishment be quashed. Of course, nothing precludes DSS from pursuing collection of its award again through the district court, so long as the requisite jurisdictional showing is made.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

whether the legislature can authorize DSS to administratively modify a court order.