Wilbert W. **VAN DER STAPPEN**, Plaintiff and Appellant,

v.

Gaylene G. **VAN DER STAPPEN**, Defendant and Appellee.

No. 900530–CA.

Court of Appeals of Utah.

Aug. 7, 1991.

---

Jean Robert Babilis, Randall Lee Marshall (argued), Jean Robert Babilis & Associates, Ogden, for plaintiff and appellant.

J.D. Poorman (argued), Ogden, for defendant and appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Wilbert W. Van Der Stappen appeals the trial court's denial of his motion to set aside a decree of divorce. He argues that because his marriage to appellee Gaylene Van Der Stappen was void ab initio, the trial court lacked subject matter jurisdiction to enter a divorce decree. We reverse.

## BACKGROUND

The parties' wedding took place on June 15, 1984. At that time, however, appellee's previous marriage to another man had not yet been legally dissolved. The decree ending that marriage was not entered until July 11, 1984.[1] However, the parties conducted themselves as husband and wife for the next several years until appellant, in May 1988, filed for divorce.

The only seriously disputed issue in the divorce proceeding was alimony. Appellant wished to pay no alimony to appellee, and he objected to a domestic relations commissioner's recommendation that he pay $400 per month for three years. Eventually, however, the parties settled upon alimony of $400 per month for one year. So stipulating, a decree of divorce between appellant and appellee was entered in December 1989.

One month later, appellant moved to set aside the divorce decree. Producing certified copies of appellee's prior divorce decree and the certificate of marriage between appellant and appellee, appellant argued that the parties' marriage had been void ab initio under Utah law. In an affidavit supporting his motion, appellant stated that he had learned of the impediment to his marriage with appellee only after his decree of divorce from her was entered.

In his affidavit, appellant also indicated that he wished to set aside the divorce decree so that he could litigate the alimony issue. Appellant stated that had he known prior to the entry of the divorce decree that

---

1. The final hearing in appellee's prior divorce took place on July 3, 1984, also after her wedding to appellant.

his marriage to appellee was void, he would have sought an annulment instead of a divorce, and would not have stipulated to the alimony ordered in his divorce decree.

The trial court accepted memoranda from the parties on the issue of whether the divorce decree should be set aside. The memorandum submitted by appellee's counsel indicated that appellee had informed appellant of the problem with her nonfinal previous divorce shortly after her wedding to appellant. However, no testimony to this effect was ever given by appellee. Indeed, because no live testimony was taken on the motion, the only evidence of record as to when appellant became aware of the impediment to the parties' marriage is appellant's affidavit.

After unrecorded oral argument by counsel, the trial court issued a memorandum decision, followed by findings of fact and conclusions of law, denying appellant's motion to set aside the divorce decree. The trial court acknowledged that "[t]here is no serious question that the purported marriage of the parties was a nullity.... Had the plaintiff [appellant] chosen to file for an annulment there is likewise no question he would have had sufficient grounds." The trial court found, however, that appellant had become aware of the impediment to the marriage shortly after the parties' June 1984 wedding.

Based on its finding of fact, the court concluded that no grounds existed to set aside the divorce decree under Utah R.Civ.P. 60(b)(1) (mistake), 60(b)(2) (newly discovered evidence), or 60(b)(3) (fraud). The trial court also held that the divorce was not void, and therefore there was no need to set it aside under Utah R.Civ.P. 60(b)(5). The basis of this holding was the fact that although the parties' marriage was void ab initio, no judicial order declaring it void had ever been entered. Finally, the trial court observed that because Utah law allows trial courts to enter equitable orders in annulments regarding the support of the parties, there was little likelihood that appellant would be prejudiced by allowing the alimony order to stand as entered. Accordingly, the trial court denied appellant's motion to set aside the divorce decree, and this appeal followed.

## ISSUE

On appeal, appellant has not briefed or argued the question of whether the divorce decree should be set aside on the basis of mistake, newly discovered evidence, or fraud. Accordingly, we do not consider these possibilities. Appellant argues only that his divorce decree is void for lack of subject matter jurisdiction because there was never a valid marriage between the parties, and therefore, the trial court erred in refusing to set the decree aside. As a component of this argument, appellant challenges the trial court's finding that he became aware of the impediment to his marriage with appellee before his divorce from her was final.

## ANALYSIS

### Rule 60(b)(5) Void Judgment

■ Ordinarily, a trial court's denial of a motion to set aside a judgment under Utah R.Civ.P. 60(b) is reviewed by appellate courts on a deferential, abuse of discretion standard. *State Dep't of Social Servs. v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989). However, a judgment is void when entered by a court that lacks subject matter jurisdiction over the controversy, and must be set aside under Utah R.Civ.P. 60(b)(5). *Id.* Furthermore, subject matter jurisdiction cannot be conferred upon a court by consent or waiver, and a judgment can be attacked for lack of subject matter jurisdiction at any time. *Thompson v. Jackson*, 743 P.2d 1230, 1232 (Utah App. 1987). Finally, the question of whether subject matter jurisdiction exists is one of law, and the determination of whether to set aside a judgment for lack of subject matter jurisdiction is reviewed without deference to the trial court. *Vijil*, 784 P.2d at 1132. We therefore review the trial court's refusal to set aside the divorce decree on a nondeferential basis.

### Subject Matter Jurisdiction over Void Marriage

▮ Under Utah law, a marriage taking place when a party is still married to someone else is void:

The following marriages are prohibited and declared void:

. . . .

(2) when there is a husband or wife living, from whom the person marrying has not been divorced;

. . . .

(5) between a divorced person and any person other than the one from whom the divorce was secured until the divorce becomes absolute, and, if an appeal is taken, until after the affirmance of the decree. . . .

Utah Code Ann. § 30–1–2 (Supp.1991).[2] Because appellee's prior divorce was not final and absolute until some time after her wedding to appellant, under section 30–1–2, the marriage of the parties was void at its outset, and no court action was required to establish this. *Sanders v. Industrial Comm'n,* 64 Utah 372, 230 P. 1026, 1027 (1924). Furthermore, the marriage could not be validated by the fact that the parties conducted themselves as husband and wife for several years after appellee's prior divorce became final.[3] *Jenkins v. Jenkins,* 107 Utah 239, 153 P.2d 262, 263 (1944) (citing *Sanders,* 230 P. at 1027). Accordingly, there was never a marriage from which a decree of divorce could be obtained. *Jenkins,* 153 P.2d at 263 ("Since the purported marriage was void there was no grounds nor necessity for divorce").

Because no marriage ever existed, appellant argues that the trial court lacked subject matter jurisdiction to enter a decree of divorce. *Caffall v. Caffall,* 5 Utah 2d 407, 303 P.2d 286 (1956), supports appellant's position. The parties in *Caffall* had married even though one or both of them had a living spouse from an undissolved earlier marriage. Nine years later Mrs. Caffall obtained a divorce from Mr. Caffall, who, after yet another nine years, moved to set the divorce aside because their marriage had been void. This motion was denied by the trial court.

The Utah Supreme Court stated that the trial court "had no jurisdiction of the subject matter since there had been no legal marriage" between the Caffalls. *Id.* 303 P.2d at 288. However, based upon a finding that Mr. Caffall had known all through the divorce proceeding that his marriage to Mrs. Caffall was void, the trial court's refusal to set aside the divorce decree was affirmed.

The supreme court noted that Mr. Caffall, having acquiesced to the divorce despite knowing that there was no marriage, had perpetrated a fraud upon the trial court. *Id.* at 287. The court also found it "quite apparent" that Mr. Caffall was, by moving to set the divorce aside, attempting to avoid paying child support ordered under the divorce decree. *Id.*[4] Based upon these considerations, along with the long delay between the entry of the divorce decree and Mr. Caffall's challenge to the decree, the supreme court held that Mr. Caffall was estopped from attacking the decree

---

**2.** The statutory prohibition on multiple marriage is repeated in Utah Code Ann. § 30–3–8 (1989), which reads: "Neither party to a divorce proceeding which dissolves their marriage by decree may marry any person other than the spouse from whom the divorce was granted until it becomes absolute. If an appeal is taken, the divorce is not absolute until after affirmance of the decree." Additionally, Article III, section 1 of the Utah Constitution states that "polygamous or plural marriages are forever prohibited."

**3.** When faced with appellant's motion to set aside the divorce decree, one argument made by

appellee was that even though there was no validly formalized marriage, the statutory unsolemnized marriage requirements, set forth in Utah Code Ann. § 30–1–4.5 (1989), had been met by the parties. However, appellee has conceded on appeal that there was no statutory "common-law" or unsolemnized marriage.

**4.** Although not entirely clear, it appears that the support ordered in the *Caffall* divorce included both child support and alimony. The supreme court, however, addressed only Mr. Caffall's effort to avoid paying child support.

despite the lack of subject matter jurisdiction. *Id.* at 288.[5]

### Sufficiency of Evidence

To the extent that *Caffall* controls here, the trial court's refusal to set aside the divorce decree depends upon its finding that appellant learned of the nonfinal nature of appellee's prior divorce shortly after the parties' wedding, and before their divorce. This finding, however, cannot stand. The only record evidence on this issue of fact is appellant's affidavit, stating that he did not learn of the impediment to the marriage until after the divorce decree ending that marriage was entered. No evidence to the contrary appears in the record.[6]

■ The representation of appellee's counsel that appellee had a different version of the facts is not sufficient to support the trial court's finding. At best, that representation is nothing more than unsworn hearsay and argument of counsel. While it may appear reasonable to suspect that appellant, wishing to avoid his alimony obligation under the divorce decree, is motivated to misrepresent when he learned of the impediment to the marriage, such suspicion also cannot be considered evidence. We are faced with a situation in which there is simply *no* evidence that can be marshaled to support the trial court's finding.[7]

Given the lack of any actual testimony or other properly admitted evidence to contest appellant's affidavit, we see no basis upon which the trial court could disbelieve or disregard the affidavit. Therefore, the finding cannot stand.

### Disposition

■ Based upon the foregoing, because the only evidence in the record is to the effect that appellant did not learn of the impediment to his marriage with appellee until after entry of the divorce decree, we must hold that the trial court erred in failing to grant appellant's motion to set aside the decree. Under Utah R.Civ.P. 60(b)(5), that decree was void because the trial court, under *Caffall,* lacked subject matter jurisdiction.[8]

---

5. *Caffall* seems inconsistent with the generally announced and fundamental legal proposition that "[s]ubject matter jurisdiction is the authority and competency of the court to decide the case," without which, the court may not validly act. *Vijil,* 784 P.2d at 1132 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (1969)). *But see* Note 8.

6. This procedure is comparable to a motion for summary judgment supported by affidavit, where the opposing party must respond with affidavits or other proper forms of rebutting evidence. *See D & L Supply v. Saurini,* 775 P.2d 420, 421 (Utah 1989); *Gadd v. Olson,* 685 P.2d 1041, 1045 (Utah 1984).

7. An appellant challenging findings of fact must marshal all the evidence supporting the findings, and then show that evidence to be insufficient. *State v. Moore,* 802 P.2d 732, 738–39 (Utah App.1990). In most cases, this is a formidable requirement, which reflects the deference owed on appeal to the trial court as the primary fact finder. Here, however, because there is no evidence in the record to support this finding, we cannot sustain the finding on appeal.

8. We are concerned that the outcome of this case poses the potential for future mischief, which mischief lies in the continued viability of *Caffall,* and that case's evident holding that

when there is no valid marriage, a trial court lacks subject matter jurisdiction to enter a divorce decree. To us, it appears likely that the relevant limitation should not be on the trial court's jurisdiction. Instead, we suggest that the limit, if any, is simply in the remedy the trial court may grant, that is, divorce versus annulment.

The foregoing likelihood exists by virtue of the broad general subject matter jurisdiction granted to Utah's district courts. "The district court shall have original jurisdiction in all matters except as limited by this constitution or by statute...." Utah Const. Art. VIII, § 5. "The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." Utah Code Ann. § 78-3-4(1) (Supp.1991). Viewing the divorce proceeding in this case as simply a civil matter between the parties, wherein a formal dissolution of their relationship was sought, along with equitable orders pursuant to such dissolution, it seems likely that subject matter jurisdiction was not lacking.

Additionally, under our statutes, district courts have the authority to grant either a decree of divorce or a decree of annulment. *See* Utah Code Ann. §§ 30-1-17 (1989) (annulment) and 30-3-1 (divorce). The discovery that the parties to this case never had a valid marriage did not, then, divest the court of its authority to resolve the dispute between them. Unlike the typical case, where the lack of subject matter

Appellee may well be troubled by this outcome. She may, however, take some consolation in the fact that the trial court has essentially the same statutory powers in an annulment action as it does in a divorce to enter orders regarding property and debt allocation, support of the parties and the children, and child custody and visitation. *See* Utah Code Ann. § 30–1–17.2 (Supp.1991) (annulment); Utah Code Ann. § 30–3–5 (Supp.1991) (divorce). Because it appears that the only equitable issue disputed by appellant is that of alimony, it is possible that an annulment decree, whether achieved by negotiation or litigation, may well produce a result identical to the divorce decree, except it will result in a decree of annulment.

### Harmless Error

We are required to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Utah R.Civ.P. 61; *see also Crookston v. Fire Ins. Exchange*, 164 Utah Adv. Rep. 3, 5, n. 2 (Utah 1991). While allowing the divorce decree in this case to stand might appear incongruous when there never was a marriage, it arguably might not affect the substantial rights of either party: each would legally be unmarried, and the appropriate equitable orders regarding that status would be in place. Additionally, appellant's argument that he would have resisted alimony more vigorously if he had been proceeding under an annulment

theory as opposed to divorce does not necessarily mean that he would have been reasonably likely to obtain a more favorable result on that issue than was reached under the divorce decree. *See State v. Verde*, 770 P.2d 116, 120–21 (Utah 1989) (discussing harmless error analysis) (*cited in Crookston*, 164 Utah Adv.Rep. at 5 and n. 4. However, there has been neither briefing nor argument on the possibility of harmless error here. Also, there may be consequences, both legal and social, which vary depending on whether a divorce or an annulment is granted. Additionally, as long as *Caffall* stands as precedent, it is questionable whether the entry of judgment where subject matter jurisdiction is lacking can ever be harmless. Therefore, we do not undertake a harmless error analysis.

### CONCLUSION

We reverse the trial court's denial of appellant's motion to set aside the judgment and remand for procedures consistent with this opinion.[9] No costs awarded.

JACKSON, J., concurs.

BENCH, J., concurs in the result.

jurisdiction means, in effect, that the parties must take their dispute to another court, the parties in this case were in the proper court. Upon litigation of the "void marriage" issue, it would have been proper to deem the pleadings amended to state a cause of action for annulment, and to enter a decree of annulment. *Jenkins*, 153 P.2d at 263; *see also* Utah R.Civ.P. 15 (pleadings may be amended, even post-judgment, to conform to evidence).

It appears, then, that *Caffall*, in asserting that there is no subject matter jurisdiction to enter a divorce decree where there is no valid underlying marriage, unnecessarily blurs the distinction between a mistake as to the exact nature of the subject matter in dispute and the court's ultimate authority and competence to decide the dispute. However, the parties to this case have

based their arguments upon the premise that *Caffall*'s statement regarding subject matter jurisdiction is controlling. Additionally, we do not have the power to overrule a decision of the supreme court. *State v. Hoff*, 814 P.2d 1119, 1123, n. 2 (Utah 1991). Therefore, it appears that at this time we can do no more than question *Caffall*. The problems we see with *Caffall* will remain unresolved until dealt with by the supreme court.

9. The exact nature of those proceedings will have to be determined by the trial court. We, however, direct the parties' attention to Utah Code Ann. § 30–1–17.4 (1989) (actions may be filed seeking, in the alternative, annulment or divorce) and Utah R.Civ.P. 15 (amendment of pleadings).