2011 UT App 359

**LaRue MILES, Petitioner and Appellee,**

v.

**Baldemar MILES, Respondent and Appellant.**

**No. 20090873–CA.**

Court of Appeals of Utah.

Oct. 27, 2011.

Jeffrey C. Howe, Salt Lake City, for Appellant.

Jared M. Anderson and Jaymon J. Thomas, Spanish Fork, for Appellee.

Before Judges McHUGH, VOROS, and ROTH.

## MEMORANDUM DECISION

ROTH, Judge:

¶ 1 Baldemar Miles (Husband) challenges the district court's denial of his rule 60(b)(4) motion to vacate the default decree of divorce on the basis that the district court did not have personal jurisdiction over him. Husband also claims that the district court abused its discretion in awarding LaRue Miles (Wife) $1000 in attorney fees when Husband's attorney failed to appear at a scheduled hearing. We affirm.

### I. Motion to Set Aside the Default Decree

¶ 2 Wife filed for divorce on June 24, 2008, eleven days after Husband left the marital home and moved to Florida with his girlfriend.[1] Husband did not leave a forwarding address with Wife, the home mortgage company, the auto company from which he leased his vehicle, the United States Postal Service, or his parents.[2] He emptied and closed the

---

1. That same date, Wife filed a motion for a restraining order and a temporary order for support. Wife attached an affidavit from Husband's father stating that he believed his son was living in Florida. That affidavit was styled as being in support of Wife's ex parte motion.

2. Although Husband later asserted that his parents either had his Florida address or could have obtained it if Wife had informed them that she was filing for divorce, he does not dispute his parents' affidavit statements that the most specific information they gave to Wife, when she inquired about his whereabouts, was that Husband was " 'probably somewhere in Florida.' "

parties' joint banking accounts and abandoned his leased vehicle at the dealership with no indication of his whereabouts. Wife unsuccessfully attempted to serve Husband with a copy of the petition for divorce and a summons at the last known address for Husband in Margate, Florida, which was the residence of Husband's girlfriend's sister. On July 31, 2008, Wife filed a motion for alternative service of process, in which she documented her efforts to locate Husband and to serve him. Wife's attorney stated in his accompanying affidavit that he had conducted a nationwide person-locator search that yielded four potential addresses-the Margate, Florida address; a second Florida address; the physical address of the parties' marital home; and the parties' post office box in Castle Dale, Utah. The district court granted the motion and allowed Wife to effect service by sending the petition and summons to each of the specified addresses, which she did on August 4, 2008. On October 15, 2008, after Husband failed to respond and on Wife's motion to shorten the ninety-day waiting period, the district court entered a default decree of divorce based on the findings of fact and conclusions of law that Wife submitted. Husband states that he first became aware of the default decree on November 17, 2008, when he received a notice at yet another Florida address, in Crawfordville, where he had actually been living, that his pension payments were being redirected to Wife pursuant to a Qualified Domestic Relations Order, entered on November 4, 2008.

¶ 3 On January 13, 2009, Husband filed his motion to vacate the default decree under rule 60(b)(4), arguing that he had not been served and that the district court therefore lacked personal jurisdiction.[3] *See generally* Utah R. Civ. P. 3(b) ("The court shall have jurisdiction from the time of . . . service of the summons and a copy of the complaint."). Husband contended that Wife had moved for alternative service without exercising reasonable diligence to locate him as required by rule 4 of the Utah Rules of Civil Procedure.

*See generally id.* R. 4(d)(4)(A) (permitting a plaintiff to seek alternative service if the "whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence"). With his motion, Husband included his affidavit and copies of certain mailings, which he alleged supported his contention that Wife was aware of his address at least prior to the entry of the divorce decree. Neither Husband's motion nor his supporting memorandum, however, specifically addressed Wife's knowledge of his Crawfordville address prior to her motion for alternative service other than through general references to Wife's continued contact with his parents.

¶ 4 Wife opposed the motion to vacate, filing her own affidavit in which she reasserted the difficulties she encountered in locating and serving Husband. She indicated that in June 2008, she had arranged for the United States Postal Service to forward Husband's mail to the Margate, Florida address—one of those on which alternative service had been authorized and the residence of Husband's girlfriend's sister—implying, without directly stating, that she might not have received the mailings on which Husband relied. Wife also attached copies of police reports that she and her daughter had made, claiming that Husband's girlfriend had made threatening calls to them on August 29, 2008, to demand that Wife stop sending Husband's mail to her sister's home. Husband did not dispute that his girlfriend made the calls. Thus, there is some suggestion in the record, however oblique, that Husband actually may have received notice of the proceedings prior to the entry of the default divorce decree.

¶ 5 Following a hearing, the motion was submitted to the district court on the memoranda, attached affidavits and supporting documents, and the arguments of counsel. The district court denied the motion to vacate. Husband now appeals.

■ ¶ 6 Rule 60(b)(4) of the Utah Rules of Civil Procedure permits a district court to

---

**3.** In the district court, Husband also asserted that the default divorce decree should be set aside as inequitable under rule 60(b)(6) of Utah Rules of Civil Procedure. He has limited his appeal to the jurisdiction question, and we therefore do not consider subsection (b)(6) as a basis for setting aside the judgment.

relieve a party from a judgment that is void. *See* Utah R. Civ. P. 60(b)(4). "[W]hen a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without denying due process to the one against whom it runs." *Department of Soc. Servs. v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989). "Therefore, the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court." *Id.* We review the factual findings underlying the jurisdictional issue for clear error. *See Cooke v. Cooke*, 2001 UT App 110, ¶ 7, 22 P.3d 1249. When a court of general jurisdiction enters a judgment, however, we presume the existence of jurisdiction, and the burden of demonstrating its absence lies with the party attacking it. *See Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 9, 100 P.3d 1211.

 ¶ 7 Husband's appeal of the denial of the motion to vacate, and the corresponding issue of whether the district court had jurisdiction, requires us to consider whether the grant of alternative service was appropriate in the first instance. Husband's appeal also raises the issue of whether Wife had any duty to inform Husband of the proceedings if she learned of his actual address after service but prior to the entry of the default divorce decree. Rule 4 of the Utah Rules of Civil Procedure allows alternative service when the "whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence." Utah R. Civ. P. 4(d)(4)(A). Reasonable diligence is that " 'diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so. If the end sought is the address of an out-of-state defendant it encompasses those steps most likely, under the circumstances, to accomplish that result.' " *Jackson Constr. Co.*, 2004 UT 89, ¶ 19, 100 P.3d 1211 (quoting *Parker v. Ross*, 117 Utah 417, 217 P.2d 373, 379 (1950) (Wolfe, J., concurring)). If reasonable diligence does not yield the address for personal service, a plaintiff may move for alternative service only if the motion is accompanied by an affidavit describing the specific efforts made to locate the other party and the court con-

cludes that those efforts were both reasonable and diligent. *See Bonneville Billing v. Whatley*, 949 P.2d 768, 773 (Utah Ct.App. 1997). This is "[b]ecause the Due Process Clause of the United States Constitution requires ... 'a plaintiff [to] act diligently and take such steps in attempting to give the defendant actual notice as are reasonably practicable.' " *Id.* (quoting *Carlson v. Bos*, 740 P.2d 1269, 1277 (Utah 1987)). "It follows therefore that if a plaintiff falsely avers or intentionally misleads a court to believe that ... she has exercised diligence when ... she has not done so, the court, although at the time appearing to have jurisdiction, never had jurisdiction because the plaintiff never met the constitutional mandate." *Id.*

## A. Wife's Knowledge Prior to the Motion for Alternative Service

¶ 8 In his rule 60(b)(4) motion and the supporting affidavit, as well as on appeal, Husband asserts that Wife's attempts to locate him fell short of the reasonable diligence mark. Husband claimed that Wife did not reasonably attempt to locate him prior to moving for alternative service because she could have informed his parents that she was seeking a divorce and asked them for his address. Wife countered this assertion with a copy of an affidavit from Husband's father, dated June 18, 2008, that had been filed in support of her June 24, 2008 motion for a restraining order and temporary support, in which the father stated that Husband was involved with a woman in Florida and that the father believed him to be currently residing there. Husband's mother later signed an affidavit in connection with Husband's motion to vacate that indicated that "[Wife] had asked where [Husband] was and we told her some place in Florida. She never pressed [for] more details. She did ask one more time but my response was the same, 'probably somewhere in Florida.' " Although Husband argues that Wife should have specifically told his parents she was filing for divorce, it is apparent that at the time that Husband's father signed an affidavit in support of Wife's motion for a restraining order and temporary support, they were aware that she had instituted legal proceedings of some kind against

their son, likely a divorce. Under these circumstances, the district court's finding that Wife had exercised reasonable diligence in attempting to extract Husband's address was not clearly erroneous.

¶9 Husband offers no additional arguments to support his claim that Wife had not exercised reasonable diligence when she moved for alternative service on July 31, 2008.[4] He thus has not borne his burden of demonstrating that personal jurisdiction was lacking because alternative service was improper in the first instance. We therefore conclude that the district court correctly granted Wife's motion for alternative service and consequently acquired jurisdiction over Husband once such service was effected. We affirm the court's denial of the motion to set aside the judgment in that respect.

B. Wife's Knowledge of Husband's Whereabouts After Alternative Service on August 4 But Prior to Entry of Default Divorce Decree on October 15

¶10 Husband next claims that Wife learned of Husband's address before the entry of the default divorce decree yet did not notify him of the proceedings. According to Husband, even if Wife did not know of his address when she requested alternative service, she "had a duty to begin sending service to the current address as soon as [she] learned of [it]." Although this argument has some logical appeal where the alternative means of service is publication or, as here, mailing to addresses that may not have resulted in actual delivery to the party to be served, Husband never alerted the district court that it had to resolve this issue separately from the decision about whether alternative service was proper. The issue is therefore unpreserved for appeal.

¶11 "Generally, in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Pratt v. Nelson*, 2007 UT 41, ¶15, 164 P.3d 366 (internal quotation marks omitted). When determining whether an is-

sue was appropriately presented in the trial court, we consider whether the issue was timely and specifically raised and whether it was supported by relevant legal authority. *See id.* We conclude that this issue was not.

¶12 In his memorandum and affidavit supporting the motion to set aside, Husband asserted that he was in possession of certain documents, namely, a dental bill and notices from two retirement accounts, that indicated that Wife knew his Crawfordville address in August or September 2008—in other words, before the entry of the decree in October 2008. He made these statements, however, in the context of his claim that the court's authorization of alternative service had been improper. Although Husband argued to the trial court that Wife knew of his address in time to "have been able to write to [him] to let [him] know about the [divorce proceedings] in October," Husband failed to cite to any legal authority or develop any argument to support his assertion that Wife had a duty to notify the court or Husband if she had learned of his actual address prior to the entry of the default divorce decree. *See generally id.* ("In short, a party may not claim to have preserved an issue for appeal by merely mentioning ... an issue without introducing supporting evidence or relevant legal authority." (omission in original) (internal quotation marks omitted)). Rather, Husband appeared to be asking the court, in effect, to infer that if Wife knew his location in September 2008, or even as early as August 2008, then she also could have known it before she requested alternative service. Thus, the claim that Wife knew of his address prior to the default decree and was obligated to so inform the court and to notify Husband was not raised specifically enough to identify it to the district court as an issue to be separately addressed and resolved. *See id.*

¶13 Even if we assume, however, that Husband sufficiently articulated a claim that Wife had a duty postalternative service to notify, he did not address the claim at the hearing on the motion to set aside or other-

---

4. Indeed, Husband does not make any serious effort to counter Wife's allegations that he had

intentionally hidden his whereabouts.

wise explain to the district court the independent significance of Wife's purported knowledge of his location in August or September 2008. Instead, Husband's primary focus at that hearing was on Wife's failure to exercise reasonable diligence in ascertaining his whereabouts because she did not adequately inquire of his parents regarding his new address. The district court's ruling denying the motion to set aside reflects that singular focus:

> [T]he Court is concerned because [Wife] did ask where [Husband] was, and [Husband's mother's] affidavit said: "She asked me more than one time, but my response was the same, 'Probably somewhere in Florida.'"
>
> Now, I don't know if [Husband's mother] knew where he was, but, clearly, that information was not given to [Wife]. [Wife] made every effort that she could to try to locate [Husband]. The fact was that [Husband]'s paramour's sister was served and that [the sister] acknowledged to [Wife]'s daughter that she had received that, that she did know that [Husband] and [his girlfriend] were together and that they had lived at her house.
>
> . . . .
>
> [Husband] walked away from the [Castle Dale] house. He made no effort to pay [for] the house. He may have had it on automatic pay, but took the money out of the bank accounts. . . .
>
> There were efforts made by [Wife] to try to find [Husband]. . . .
>
> There's evidence in the file of attempts made by [Wife] to—through the U.S. Postal Service, through a person locator on the internet, through many mailings that were returned. There were attempts made at . . . [the] Margate, Florida [address], there

were efforts made—these were the best efforts that—or these were the best addresses that [Wife] could find.

After the court made this oral ruling and Wife submitted a written order denying the motion to set aside, Husband did not make any objections or assert that there was an unresolved factual issue about whether Wife knew Husband's address after alternative service was effective but prior to the entry of judgment. Nor did he assert that there was an unaddressed legal question regarding what her duty would be if she did in fact have such knowledge. It is only on appeal that Husband plainly states that "[e]ven if [Wife] did not know [Husband's] current address when [she] filed the motion for alternative service of process, [Wife] still had a duty to begin sending service to the current address as soon as [she] learned of [it]."

¶ 14 Thus, the issue was not raised in a timely fashion to the district court. We therefore decline to address it for lack of preservation, as doing so would undermine the principle that "in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it."[5] *See id.* (internal quotation marks omitted).

## II. Attorney Fees

¶ 15 Husband also challenges the district court's award of $1000 in attorney fees for the failure of Husband's attorney to appear at the initial hearing on the motion to set aside. Both parties were represented by counsel whose respective offices were approximately two hours away from the Castle Dale courtroom. Husband's attorney experienced car trouble during the drive to Castle Dale and telephonically moved for a continuance. Wife's counsel, who had been waiting

---

5. Husband did not identify any exceptions to the preservation requirement in his appellate brief. *See* Utah R.App. P. 24(a)(9) (requiring an appellant to identify the portion of the record where the issue was raised and, if the issue was not preserved, to include grounds for its review). Even if we had grounds to circumvent the preservation requirement, however, we could not reach this issue on appeal because it is inadequately briefed. Although Husband has more directly identified a potential factual dispute in the affidavits that, had it been brought to the

district court's attention, could have given rise to an evidentiary hearing, *see Stan Katz Real Estate v. Chavez*, 565 P.2d 1142, 1143–44 (Utah 1977) (remanding for an evidentiary hearing where the affidavits created a dispute of fact), he still does not cite to any legal authority or develop any argument to support his bare contention that Wife had a duty to notify him or the court if she had learned of his Crawfordville address prior to entry of the default divorce decree, *see* Utah R.App. P. 24(a)(9) (requiring an appellant's brief to include arguments with supporting authority).

at the courthouse for approximately one hour by the time the phone call was received and the motion was made, agreed to the continuance but made an oral motion for attorney fees. The district court reserved a ruling on that motion until the rescheduled hearing on the motion to set aside. At that hearing, the district court awarded Wife $1000 in attorney fees.

¶ 16 When a party fails to appear at a scheduled hearing, the district court has authority to order that party to pay the other party's reasonable costs associated with the appearance. *See* Utah Code Ann. § 78A–2–201 (2008) (including within the inherent powers of a court, the power to "enforce order in the proceedings before it," to "compel obedience," and to "control ... the persons connected with a judicial proceeding"); *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993) ("[C]ourts of general jurisdiction ... possess certain inherent power to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court."). Husband does not contend that the amount of the award was unreasonable but rather asserts that the district court failed to consider the requisite factors prior to entering the award. Husband, however, has relied upon cases that consider the award of attorney fees incurred to prosecute or defend a divorce action, not fees awarded under the court's inherent authority to control its proceedings. Because the award appears to be within the court's inherent powers and Husband is not claiming that the amount awarded was unreasonable, we affirm the district court's decision to grant Wife $1000 in fees "to compensate [her] for delay, inconvenience and the expense resulting from" Husband's failure to appear at a scheduled hearing, *see Griffith v. Griffith*, 1999 UT 78, ¶ 14, 985 P.2d 255 (internal quotation marks omitted).

### III. Conclusion

¶ 17 We affirm the district court's initial order authorizing alternative service on Husband and, consequently, the district court's exercise of personal jurisdiction over Husband. Because Husband's contention that Wife had a duty to notify the court and

Husband if she learned of his actual address prior to the entry of judgment is not preserved, we decline to review it. With respect to the attorney fees, we affirm because the award was within the district court's inherent powers to control scheduling and the movement of proceedings in its courtroom.

¶ 18 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and J. FREDERIC VOROS JR., Judge.