2011 UT App 433

**Annette LISTON, Petitioner and Appellee,**

v.

**Sergay LISTON, Respondent and Appellant.**

**No. 20100666–CA.**

Court of Appeals of Utah.

Dec. 22, 2011.

Clark R. Ward, Midvale, for Appellant.

Todd D. Gardner, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and CHRISTIANSEN.

1. The record does not indicate how many shares the parties had before the property was subdivided. In addition, the parties refer to the four shares of stock as "water shares" but argue as if the shares were water rights. In fact, the parties own four shares of capital stock in the Holliday Water Company, which entitles the owner of the stock to 60,000 gallons of water per year/per

## OPINION

McHUGH, Associate Presiding Judge:

¶1 Sergay Liston (Husband) appeals from various rulings in the trial court's divorce decree. We affirm as to all issues.

## BACKGROUND

¶2 Husband and Annette Liston (Wife) married May 20, 2002. Both parties were sixty-five years old at the time of the marriage, and both had been married and divorced on two prior occasions. Husband and Wife separated on approximately January 15, 2008, after being married for five years and eight months.

¶3 During their marriage, Husband and Wife bought a marital home and successfully subdivided the lot for profit. After the division, the parties had four shares of stock in the Holliday Water Company associated with the marital home.[1] Husband was gainfully employed at his own consulting/engineering firm for part of the marriage, but the parties testified that they kept their finances separate and that Husband maintained several different investment accounts. At the time of separation, Wife carried $30,500 of credit card debt she claimed was related to family expenses.

¶4 The divorce action between Husband and Wife was tried on June 24 and 25, 2010. During trial, the trial court took judicial notice of the forty-two page docket "reflecting the course of the divorce case between [Husband] and his second wife, which matter was handled in Davis County." The trial court issued findings of fact on July 2, 2010, and entered the final decree of divorce in this matter on July 15, 2010. Husband now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶5 Husband asserts five issues on appeal, only four of which were preserved.

share without charge. In contrast, a water right is a property right that allows its owner to acquire the use of "unappropriated public waters" from the state of Utah. *See* Utah Code Ann. § 73-3-1 (Supp.2011); *see also Haik v. Sandy City*, 2011 UT 26, ¶¶1, 3, 254 P.3d 171 (discussing a disputed water right as a property right).

First, Husband argues that the trial court abused its discretion by finding that Wife's credit card debt was a marital obligation to be shared equally by the parties. Second, Husband asserts that the trial court erred in allocating the funds in Husband's investment accounts between his separate property and marital property and that the trial court abused its discretion in determining that Wife was entitled to $136,525 from those accounts. "A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity." *Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176 (alteration in original) (internal quotation marks omitted). Consequently, we will not disturb a property award unless we determine that there has been "a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (internal quotation marks omitted). However, whether property is marital or separate is a question of law, and thus " 'we review the trial court's legal conclusions concerning the nature of property for correctness.' " *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 14, 257 P.3d 478 (quoting *Bradford v. Bradford*, 1999 UT App 373, ¶ 11, 993 P.2d 887), *cert. denied*, 263 P.3d 390 (Utah 2011).

¶ 6 Third, Husband contends that the trial court erred when it determined that three of the parties' four shares of stock in the Holliday Water Company were not appurtenant to the marital property and thus did not pass to Husband through the parties' partial mediation agreement. Whether the shares were appurtenant to the marital property is a mixed question of law and fact, and although "we defer to the trial court's factual findings unless they are shown to be clearly erroneous, we review its ultimate conclusion for correctness." *Jensen v. Jensen*, 2007 UT App 377, ¶ 2, 173 P.3d 223 (internal quotation marks omitted).

¶ 7 Fourth, Husband asserts that the trial court erred by taking judicial notice of Husband's prior divorce action without notifying counsel beforehand, and then erred by referring to the divorce action while questioning Husband and by mentioning the prior action in its findings of fact. Because Husband never objected to the propriety of the trial court taking judicial notice of his prior divorce action, which he could have done at any time during the proceedings, *see* Utah R. Evid. 201(e)-(f), the argument is not preserved and we do not consider it. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (stating that issues not raised before the trial court may not be raised on appeal). Additionally, Husband argues that "[t]he court abandoned its neutral role and became an advocate for [Wife]" and that "[t]he court was biased against [Husband], which manifested itself in the manner in which [the court] exercised its discretionary authority in determining and dividing the marital estate." Because Husband did not file a motion to recuse the trial court, the issue of bias is also not preserved and we do not consider it. *See id.; see also* Utah R. Civ. P. 63(b) (stating that a party alleging bias of a judge must file a motion to disqualify "after commencement of the action, but not later than [twenty] days after . . . the date on which the moving party learns or with the exercise of reasonable diligence should have learned of the grounds upon which the motion is based").

¶ 8 Fifth, Husband argues that the trial court abused its discretion by awarding Wife attorney fees but denying Husband's request for attorney fees. "We review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion." *Jensen v. Jensen*, 2008 UT App 392, ¶ 8, 197 P.3d 117.

## ANALYSIS

### I. Wife's Credit Card Debt

¶ 9 Husband contends that the trial court exceeded its discretion by finding that $30,500 of Wife's credit card debt was "a marital obligation, to be shared equally." Husband argues that Wife's debt could not be a marital obligation because the parties kept their finances separate and he was "powerless to know or control [Wife]'s spending," and that "[a]n individual in such a powerless and ignorant position should not be

held jointly liable for debts incurred during a marriage by a spouse who is concealing the use of [her] individual credit account."

¶ 10 Utah Code section 30–2–5 provides that "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other ... contracted or incurred during marriage." Utah Code Ann. § 30–2–5(1)(b) (Supp.2011).[2] However, both parties are liable for family expenses. *See id.* § 30–2–9(1). "Moreover, [i]n a divorce action, there is no fixed formula upon which to determine a division of debts. However, such allocation must be based upon adequate factual findings which ruling we will not disturb absent an abuse of discretion." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 46, 176 P.3d 476 (alteration in original) (internal quotation marks omitted).

¶ 11 Here, the trial court determined that $30,500 of Wife's credit card debt, which is only a portion of the debt she carries, was marital debt. During trial, the trial court heard testimony from Wife that the balance on her credit cards "was an accumulation of five years.... Whenever we went out, I was usually the one that paid. I bought all the groceries. It was stuff for the house." The trial court then heard contrary testimony from Husband, who claimed that he was the one paying all the bills. Husband testified that although Wife "did buy a bag or two of groceries every once in a while," a lot of their food came from their garden. Finally, Husband proclaimed ignorance with regard to Wife's credit card balances and testified that he had "no idea what her [credit card] statements were." After hearing the evidence, the trial court ruled,

> [Wife] has established debts of at least $30,500, which sum the Court finds to be supported sufficiently by the evidence. The Court finds that there is no evidence supporting any argument that [Wife] incurred the $30,500 for her exclusive benefit, or that the parties did not benefit through the course of the marriage from her expenditures.... During the marriage, [Wife] paid for many day-to-day ex-

penses, including food, entertainment, Christmas for families, and travel.... For the foregoing reasons, the Court finds that the $30,500 in debt as of the date of separation in January 2008, is a marital obligation, to be shared equally.

Because the trial court's findings are adequate on this point and Husband failed to show that the trial court exceeded its discretion, we will not disturb the trial court's determination that Husband is responsible for the sum of $15,250, which is half of the marital debt. *See id.*

## II. Husband's Investment Accounts

¶ 12 Husband contends that the trial court erred by finding that $273,050 of the funds in his investment accounts were marital property. Thus, Husband argues that the trial court exceeded its discretion in awarding Wife half of that amount, $136,525, in the property distribution. " 'In Utah, marital property is ordinarily divided equally between the divorcing spouses and separate property, which may include premarital assets, inheritances, or similar assets, will be awarded to the acquiring spouse.' " *Id.* ¶ 13 (quoting *Olsen v. Olsen*, 2007 UT App 296, ¶ 23, 169 P.3d 765). "[T]he rule for [separate] property is that each party retain the separate property he or she brought into the marriage. Some exceptions include where the property has been commingled so that it has lost its separate character or where it is fair, just and equitable to do otherwise." *Dunn v. Dunn*, 802 P.2d 1314, 1321 (Utah Ct.App.1990) (citation omitted).

¶ 13 Here, the majority of the trial consisted of testimony about Husband's investment accounts, and the trial court had the unenviable job of unraveling the transactions involving those accounts to determine what portion of the funds constituted separate property and what portion constituted marital property. Recognizing that Husband had "accumulated various monies over the years" but that "[d]uring the marriage some accounts [were] closed, some funds [were] transferred, and others [were] combined," the trial court en-

2. Because the material provisions of the statute have not changed, we cite the current version of the Utah Code as a convenience to the reader.

gaged in a thorough analysis, which traced Husband's funds as they were transferred from various accounts.

¶ 14 As a starting point for the trial court's review, it relied on "the analysis and testimony of Rebecca Schreyer, CPA." Husband argues that allowing the CPA to testify was the trial court's first error with regard to the investment accounts because she did not submit an expert report as required by rule 26(a)(3) of the Utah Rules of Civil Procedure.[3] However, both parties stipulated to the use of a CPA to sort out Husband's accounts and did not require that the CPA file a report. An expert report is required only if not "otherwise stipulated by the parties or ordered by the court." *See* Utah R. Civ. P. 26(a)(3)(B). Consequently, the trial court did not err in overruling Husband's objection and allowing the CPA to testify.

¶ 15 The trial court then analyzed each of Husband's investment accounts and explained which funds in those accounts it found to be marital property and which funds it determined were separate property. First, the trial court looked at Husband's account number 5706 and determined that it had a balance of $72,065.66 at the time of the marriage and that this sum was never transmuted to marital property. The trial court then determined that $77,559.89 was added to account number 5706 during the marriage and constituted marital funds. Although Husband disputes this finding and claims that those funds were gifts from his mother, the trial court was not convinced. The trial court explained, "[Husband] proffers no documentary evidence or other evidence that would support his claim." Indeed, the deposits to the account were temporally related to payments Husband received in connection with the subdivision of the marital property.

¶ 16 Next, the trial court indicated that "[e]ven if the Court was inclined to believe those sums might have come as a separate gift [from his mother], subsequent actions involving this account, combined with the lack of evidence regarding the source of the funds, persuade the Court that all of these amounts should be treated as marital funds."

The subsequent actions to which the trial court referred include Husband's transfer of all of the assets from account number 5706, totaling $161,984.31, to account number 3162, which was held solely in Wife's name. The trial court noted that the funds remained in Wife's account for approximately six months.

¶ 17 Husband now asserts that the trial court exceeded its discretion when evaluating the funds in account number 3162 because "the temporary use of [Wife]'s name for the preservation and protection of premarital funds does not constitute a transmutation or commingling to change the identity of the funds to a marital asset." Yet, it is evident from the trial court's findings that it did not find that Husband had commingled his funds solely because he transferred the sum of $161,984.31 into an account held under Wife's name. Instead, the trial court first found that $77,559.89 of the funds comprising the sum of $161,984.31 was marital property. Thus, the trial court found that Husband commingled marital and nonmarital property in account number 5706 and then transferred those commingled funds into account number 3162, held solely in Wife's name. After six months, Husband transferred all of those funds from Wife's account number 3162 to an account he opened under his mother's name, account number 7442. Husband argues that the transfer into Wife's account, and the subsequent transfer to an account he controlled, but opened in his mother's name, was to protect the funds from his second wife's attempts to enforce the orders entered in the divorce action ending that second marriage. Not surprisingly, the trial court did not find Husband's explanation helpful to his position. Specifically, in regard to these transfers, the trial court stated,

> [Husband] admits that he made that transfer [to Wife's account], and claims without any apparent understanding of the irony of the situation, that he did so to protect the money from garnishment for sums due to his second wife, pursuant to judgments in Davis County. That transfer occurred on June 1, 2004, and about six months later the money in account ending 3162 was

3. Rule 26 of the Utah Rules of Civil Procedure has since been amended, but the amendment is only effective as to cases filed on or after November 1, 2011, and thus does not apply to this case.

transferred to account ending 7442, which [Husband] opened, this time in his mother's name. The Court does not believe that [Husband] claims that the money was in fact his mother's, but even if he made such a claim, it is clear to the Court that the use of his mother's name on [account number 7442] was simply another device to protect money, either from his second wife, or from [Wife].

¶ 18 The trial court then focused on account number 7442 held in Husband's mother's name and noted that it had been opened with a $30,000 deposit in 2004. Husband claimed that the $30,000 initial deposit was not comprised of marital funds, but the trial court determined that the $30,000 came from an account, also in Husband's mother's name (the First Lorena Liston account), to "which [Husband] channeled all of his day-to-day income and expenses, including his marital earnings, which were substantial during this time period." The trial court concluded that it did "not have any doubt that the $30,000 that funded the [7442] account initially, and subsequent deposits in the total amount of $95,000 ... comprise marital property." Thus, the trial court found that Husband had commingled marital and separate funds in both the First Lorena Liston account and account number 7442 by using them as a repository for his marital earnings and day-to-day expenses. The trial court's conclusion was not in error. See Mortensen v. Mortensen, 760 P.2d 304, 307 (Utah 1988) (concluding that property is considered commingled when it "completely loses its identity and is not traceable"). Furthermore, Husband provided no evidence attempting to segregate the marital and nonmarital income and expenses.

¶ 19 Next, the trial court considered Husband's transfer of $357,334.89 from account number 7442 to account number 5385, held solely in Husband's name. The trial court found that the final balance in Husband's account number 5385 was $390,585 as determined by the CPA. Based on the evidence, the trial court subtracted $19,924.97 from the

$390,585 balance to account for the fact that the CPA had not added in "$5,000 from the business check deposit during the term of the marriage" but had added $24,924.97, an amount that the trial court determined to be Husband's separate property. Second, the trial court subtracted $97,027, which the trial court determined to be $72,065.66 of Husband's separate property that was originally in account number 5706, plus interest on that account. See Dunn v. Dunn, 802 P.2d 1314, 1320 (Utah Ct.App.1990) (concluding that the appreciation of separate property is separate property). Finally, the trial court reduced the sum by $513 to account for the growth of Husband's separate property and determined that the marital property in Husband's investment accounts equaled $273,050.[4]

¶ 20 Based on our review of the record and the trial court's thoughtful and detailed analysis of the sources of the various funds in Husband's investment accounts and the transfers to and from the different accounts, we conclude that the trial court did not err in determining the nature of Husband's funds. Further, the trial court did not exceed its discretion in awarding Wife half of the marital property in those accounts. See Stonehocker v. Stonehocker, 2008 UT App 11, ¶ 13, 176 P.3d 476 (stating that marital property is usually divided equally).

### III. Shares of Stock in the Holliday Water Company

¶ 21 Husband next asserts that the trial court erred when it found that the parties' partial mediation agreement, in which Wife agreed to quitclaim her interest in the marital property to Husband in exchange for $10,000, did not cover three of the parties' four shares of stock in the Holliday Water Company. According to Husband, all four shares were appurtenant to the marital home and necessarily passed under the quitclaim deed.

¶ 22 In reaching its findings and legal conclusion that three of the parties' four shares of stock were not appurtenant to the property, the trial court found the testimony from

4. It appears that this number reflects an insignificant mathematical error. When we calculate the deductions and additions identified by the trial court, we arrive at the amount of $273,120. Because Wife has not raised this issue on appeal, we do not disturb the award.

the manager of Holliday Water Company (manager) "to be persuasive." The manager testified that "[i]n order to have a water connection with Holliday Water Company, there has to be a share of stock that's associated with the meter that goes to that property," and "[e]ach meter has to have a share of stock, and that share of stock has to stay with the meter." The manager also testified that the shares in the water company are issued and transferred as stock certificates. When asked if someone who owned four shares could sell three of them, the manager explained that "[i]f you had [one] meter, and only had one meter, you could sell the three that weren't connected to that meter." The manager also testified that one share of stock is worth $5,000 and that there is a market for the stock. Husband offered no contrary evidence. Relying on the manager's testimony, the trial court found that only one of the parties' four shares was "in fact appurtenant to the property" and that "[t]he remaining three shares are indisputably valued at $5,000 each."

¶ 23 Utah Code section 73–1–11(4) states, "The right to the use of water evidenced by shares of stock in a corporation shall not be deemed appurtenant to land." Utah Code Ann. § 73–1–11(4) (Supp.2011). Here, the right to water use is evidenced by shares of stock in the Holliday Water Company. Thus, the trial court was correct in concluding that the three disputed shares were freely assignable and separate from the property. Further, the trial court did not exceed its discretion in finding, based on the manager's unrefuted testimony, that the shares each had a value of $5,000.

¶ 24 Because the shares are not appurtenant to the marital home, they would not automatically be transferred with it. Instead, the shares would be conveyed only if an agreement was reached to do so as part of the partial mediation agreement. We agree with the trial court's conclusion "that the three nonappurtenant ... shares were not covered by the [partial] mediation agreement for satisfaction of [Wife]'s interest in the real property." Husband argues that there is no evidence that the three shares in question were not covered by the partial mediation

agreement because Wife knew about the shares "for a long period of time" and she was represented by counsel during the mediation sessions. However, there is nothing in the partial mediation agreement to indicate that the shares of stock in the Holliday Water Company were to pass to Husband when Wife relinquished her interest in the marital property for $10,000. Nor is such an intent plain from the circumstances. This is especially so when Wife's half of the three shares of stock at issue is valued at $7,500, and she received only $10,000 under the partial mediation agreement for her interest in the marital home. "It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract." *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶ 14, 221 P.3d 867 (internal quotation marks omitted). Because the shares of stock are not explicitly mentioned in the partial mediation agreement and there was no evidence presented indicating that they were discussed, Husband has not met his burden of establishing that the parties had a "meeting of the minds" as to how those shares of stock should be divided. *See id.*

¶ 25 Where the shares are not appurtenant to the land and the parties reached no separate agreement to convey them with the home, we agree with the trial court that Wife is entitled to half of the value of the three disputed shares of stock in the water company. Indeed, Husband's claim that the stock automatically passed with the marital home is contrary to statute, *see* Utah Code Ann. § 73–1–11(4), and convention, as explained by the manager of the Holliday Water Company. Thus, while we agree with Husband that typically "[s]tipulations entered into in contemplation of a divorce are conclusive and binding on the parties," *Bayles v. Bayles*, 1999 UT App 128, ¶ 15, 981 P.2d 403 (internal quotation marks omitted), we do not agree that the trial court erred when it determined that the partial mediation agreement did not address the division of stock. Therefore, we affirm the trial court's order that Husband pay Wife $7,500 for her half of the interest in the three disputed water shares.

### IV. Attorney Fees

¶ 26 Finally, Husband argues that the trial court exceeded its discretion by ordering that he pay Wife $5,000 in attorney fees "where it was demonstrated that [Husband] does not have [the] marital financial resources to do so, and there was no affidavit of [Wife]'s counsel as required under Utah Rules of Civil Procedure 102(a)."[5] If the trial court had awarded fees under Utah Code section 30-3-3(1), see Utah Code Ann. § 30-3-3(1) (Supp.2011) (governing the award of attorney fees in a divorce action), Wife's attorney would have had to provide an affidavit detailing the fees incurred, pursuant to rule 102(a), see Utah R. Civ. P. 102(a) ("In an action under Utah Code [s]ection 30-3-3(1), either party may move the court for an order requiring the other party to provide ... attorney fees.... The motion shall be accompanied by an affidavit setting forth the factual basis for the motion and the amount requested."). However, when a trial court awards fees under its inherent power to sanction, section 30-3-3 and its requirements are not implicated. See Miles v. Miles, 2011 UT App 359, ¶ 16, 694 Utah Adv. Rep. 43 (upholding the trial court's inherent power to award attorney fees to a wife in a case where the husband failed to appear at a scheduled hearing). See generally Griffith v. Griffith, 1999 UT 78, ¶¶ 14–16, 985 P.2d 255 (upholding the trial court's inherent power to award attorney fees where one attorney brought a motion without merit); Barnard v. Wassermann, 855 P.2d 243,· 249 (Utah 1993) ("[C]ourts of general jurisdiction ... possess certain inherent power to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court.").

¶ 27 Although the trial court found that the parties had the ability to pay their own attorney fees, it awarded Wife a portion of her attorney fees "based on the issue of fault, primarily [Husband]'s ongoing and blatant attempts to hide assets, confuse financial transactions, and otherwise avoid being accountable for his Court Ordered and marital obligations." The trial court determined that $5,000 was an appropriate amount to sanction Husband for his obstreperous conduct. Given the trial court's findings and Husband's failure to challenge the trial court's inherent power to award attorney fees as a sanction, we affirm the trial court's award of $5,000 in attorney fees to Wife.[6]

### CONCLUSION

¶ 28 Trial courts have considerable discretion in divorce actions to distribute marital property equitably. The trial court did not exceed its discretion in determining that both parties should bear half the burden of the debts Wife incurred for family expenses. Next, the trial court did not err in determining the nature of the property in Husband's investment accounts, and the trial court did not exceed its discretion in awarding Wife half of the marital property in those accounts. Further, the trial court did not err in determining that the partial mediation agreement did not address the distribution of the parties' shares of stock in the Holliday Water Company and acted within its discretion in awarding Wife half the value of the challenged shares as determined by the trial court. Finally, the trial court acted within its discretion in awarding Wife $5,000 in attorney fees as a sanction for Husband's conduct during the litigation.

¶ 29 Affirmed.

¶ 30 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.

---

5. Husband also contends that the trial court exceeded its discretion when it denied him attorney fees relating to Wife's unsuccessful petition for a protective order. Because Husband does not brief the issue, we decline to address it. See Utah R.App. P. 24(a)(9).

6. Although Wife requests attorney fees on appeal, because the trial court awarded Wife attorney fees only as a sanction for Husband's conduct during litigation, we deny that request.