2014 UT App 125

Natalie **MAXWELL**, Plaintiff and Appellant,

v.

James H. **WOODALL**, Defendant and Appellee.

No. 20130136–CA.

Court of Appeals of Utah.

June 5, 2014.

---

Walter T. Keane, Cottonwood Heights, Attorney for Appellant.

K. Bradley Carr, Attorney for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Memorandum Decision, in which Judges GREGORY K. ORME and JOHN A. PEARCE concurred.

CHRISTIANSEN, Judge:

¶ 1 Plaintiff Natalie Maxwell appeals from the district court's award of attorney fees in favor of James H. Woodall. We affirm.

¶ 2 On April 2, 2012, Maxwell filed a declaratory-judgment action against Woodall, claiming that Woodall had attempted to conduct an unauthorized nonjudicial foreclosure of her property. Maxwell's complaint alleged that pursuant to Utah Code section 57–1–21, Woodall was an unqualified trustee who did not have the legal authority to conduct a sale of Maxwell's property. In response, Woodall moved to dismiss Maxwell's complaint, arguing that he was a qualified trustee by virtue of the original lender's reassignment of the trust deed. Maxwell's attorney, Walter T. Keane, hired another attorney, Eric S. Allen, to appear as substitute counsel at the oral arguments held on Woodall's motion to dismiss. The district court determined that regardless of whether Woodall was a qualified trustee, Maxwell's suit was not ripe because the property had not been sold and no foreclosure occurred. The court therefore did not reach the merits of the case and dismissed Maxwell's complaint without prejudice.

¶ 3 After discussing the hearing with Allen, Keane drafted a proposed order [1] that included the following statement: "The Court spe-

---

1. It is unclear from the record why Keane, as the attorney for the nonprevailing party, prepared the proposed order. *See* Utah R. Civ. P. 7(f)(2) ("[U]nless otherwise directed by the court, the prevailing party shall … serve upon the other parties a proposed order in conformity with the court's decision."); *see Central Utah Water Conservancy Dist. v. King*, 2013 UT 13, ¶ 9, 297 P.3d 619.

cifically finds that the plaintiff's action was brought in good-faith." Woodall objected to Keane's proposed order, asserting that the district court never found Maxwell's suit to have been brought in good faith. Woodall also alleged that Keane's strategy was to file frivolous lawsuits hoping to cause foreclosing lenders to refrain from taking a property to sale until the litigation had been resolved. Woodall supported his allegation with a screenshot of Keane's website, which advertised, "Walter [Keane] has clients living rent-free for over 36–months," and asked, "Would you like to live rent-free?" Based on his argument that Keane's proposed order was flawed and that the underlying lawsuit was meritless, Woodall requested in his objection that "[Keane] be sanctioned as the Court deems appropriate."

¶ 4 After a hearing on Woodall's objection to Keane's proposed order, the district court ruled in Woodall's favor and awarded him $1,750 in attorney fees. The court docket reflected that the award was to be imposed against Keane's client, Maxwell, as the judgment debtor instead of Keane. Keane filed a rule 59 motion to correct the apparent mistake. *See* Utah R. Civ. P. 59. The court then held another hearing to address Keane's rule 59 motion. Following that hearing, the court denied the rule 59 motion but nevertheless amended its prior order to clarify that the attorney fees award was against Keane personally and not against Maxwell. The court explained that the award was "based not on Rule 11, but based on the frivolous, unnecessary aspect of the proceedings up to this point."

¶ 5 Though officially not a party on appeal, we refer to Keane throughout this decision as though he were the appellant because Maxwell's appeal challenges only the attorney fees award against Keane. On appeal, Keane argues that the district court improperly awarded the attorney fees pursuant to Utah Code section 78B–5–825. "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith...." Utah Code Ann. § 78B–5–825 (LexisNexis 2008). However, nothing in the court's order indicates that the court based its attorney fees award on section 78B–5–825. The basis for the court's entry of sanctions was not a determination that Maxwell *asserted* the action in bad faith but a "subsequent finding of bad faith on the part of [Keane]." And the court's final order imposed sanctions against Keane alone for that conduct and not against Maxwell for bringing the action. Accordingly, we do not agree that the court awarded attorney fees under section 78B–5–825, and we do not analyze the award under that framework. Rather, we conclude that the district court's award of attorney fees should properly be construed as an exercise of the court's inherent power to sanction attorney conduct, and we review the court's exercise of that power for an abuse of discretion. *See Goggin v. Goggin*, 2013 UT 16, ¶¶ 35, 26, 299 P.3d 1079.

¶ 6 Our supreme court has explained that "courts of general jurisdiction," such as the district court here, "possess certain inherent power to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court." *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993); *accord Griffith v. Griffith*, 1999 UT 78, ¶ 13, 985 P.2d 255. This inherent power is

> continuing, and plenary, and exists independently of statute or rules of equity, and ought to be assumed and exercised as the exigencies and necessity of the case require, not only to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business, but also to control and protect its officers, including attorneys.

*In re Evans*, 42 Utah 282, 130 P. 217, 225 (1913). In order for a court to fully exercise its inherent sanction power, an implicit "mechanism for enforcement" must exist. *Barnard*, 855 P.2d at 249. "That mechanism may take a variety of forms, one example of which is the assessment of attorney fees." *Id.; see also Goggin*, 2013 UT 16, ¶ 35, 299 P.3d 1079 ("[A] court may be able to award attorney fees as a sanction under its inherent sanction powers."). Such enforcement sanctions are important because without them,

"the power to enforce would be meaningless." *Barnard,* 855 P.2d at 249. An award of attorney fees pursuant to a court's inherent sanction power is appropriate even in the absence of a statutory or contractual authorization. *Goggin,* 2013 UT 16, ¶¶ 32, 35, 299 P.3d 1079.

¶ 7 Based on our review of the record, we conclude that the district court did not abuse its discretion in awarding attorney fees to Woodall. We reach this conclusion without explicitly analyzing the court's determinations that Maxwell's underlying suit was "frivolous" and that Keane acted in "bad faith" during the course of litigation. Rather, we are convinced that, irrespective of a finding of bad faith or frivolity, the district court's attorney fees award was a permissible exercise of its inherent power to control "the conduct of attorneys and litigants" whose "actions interfered with the administration of justice and resulted in wasted time and effort by opposing counsel." *See Barnard,* 855 P.2d at 249; *see also Griffith,* 1999 UT 78, ¶ 14, 985 P.2d 255 (affirming an award of attorney fees under the court's inherent sanction power to "compensate for delay, inconvenience and the expense resulting from [the attorney's] behavior" (alteration in original) (citation and internal quotation marks omitted)).

¶ 8 Upon determining at the conclusion of the hearing on Woodall's motion to dismiss that Maxwell's complaint was not ripe for adjudication, the district court warned both parties about the possibility of sanctions if the court were to discover that either party was "playing games." With this warning in place, Keane drafted the proposed order, which erroneously stated that the court had specifically found Maxwell's complaint to have been brought in good faith. Because Woodall considered the flaw in the proposed order to be a material error—as he believed Keane's behavior to be manipulative [2]—Woodall filed an objection to Keane's proposed order on June 19, 2012. For over two months, Keane took no action to correct the apparent mistake in his proposed order. On

the morning of the hearing on Woodall's objection on August 29, 2012, Keane presented a new proposed order; however, no copy of the new proposed order is included in the record, and it is therefore impossible for us to ascertain whether it would have cured the flaw in the original proposed order. At the August 29 hearing, Woodall's counsel asked the court "for some sort of sanctions to be assessed" due to the delay caused by Keane's flawed proposed order and Keane's "waiting until an hour before the hearing to finally make attempts to comply." Woodall's counsel claimed that the delays and additional litigation resulted in Woodall incurring unnecessary fees. The court expressed some confusion over Keane's inclusion of the good-faith language in the original proposed order and asked Keane if the court had previously made such a finding. Keane responded, "Yeah, I think, your honor, I didn't request a transcript, but I did speak with Mr. Allen subsequent to the hearing.... And by the way, my clients have reinstated the loan and so, we've acted, I feel in good faith in this entire action." Nevertheless, the court expressed its concern that the parties and the court were required "to delay things further" to resolve the matter. Accordingly, the district court agreed with Woodall and granted his request for attorney fees.

¶ 9 At the hearing on Keane's rule 59 motion, held more than four months later on January 2, 2013, the district court further questioned Keane about the inclusion of the good faith finding in the original proposed order. The questioning commenced after Keane admitted that inclusion of that finding was a mistake:

> THE COURT: Well, now, today is the first time I think I've heard that there was no good faith reference and that you've abandoned that argument.
>
> MR. KEANE: Yes, I have.
>
> THE COURT: Today is the first time I've heard that; is that true?
>
> MR. KEANE: I—yes. It is.

---

2. In his objection, Woodall argued that Keane's "insertion of a finding of good faith will undoubtedly result in [the district court's] order being offered in other matters as 'evidence' that Mr. Keane is acting in good faith."

THE COURT: So what—what does it take—why has it taken you this long to—to respond on that issue?

MR. KEANE: I—your Honor, I thought I did.

THE COURT: Well, I—I just asked you if today was the first time.

MR. KEANE: I think I said—I think in the—in the materials I sent in and once I obtained the record, I believe—

THE COURT: Well, when did you get the record?

MR. KEANE: I'll have to look at it. As soon as I got the record, I filed for the rule 59, I believe. If you'll give me a moment, your Honor. Your Honor, I thought I have filed a transcript in the matter and I may not have filed it in this litigation, but referenced it in another matter before the Court. The—but I'm not sure if it was mentioned, but I thought if it was in the transcript, the Court would discern that. And one other point, your Honor—

THE COURT: Well, no. No.

MR. KEANE: Oh.

THE COURT: Mr. Woodall objected to the form of the order last June.

MR. KEANE: Right.

THE COURT: And his objection was very simply, there's nothing in there that talks about good faith and you shouldn't be including that in the order; right?

MR. KEANE: Correct. Yes, your Honor.

THE COURT: So now—now, it's six, seven months later.

MR. KEANE: Yes, your Honor.

THE COURT: And today, for the first time, I'm hearing, there isn't anything in the transcript that said good faith.

MR. KEANE: The transcript itself was ordered and was available—

THE COURT: Well,—

MR. KEANE:—to the Court—

THE COURT:—I don't go around reading files randomly.

MR. KEANE: Okay.

THE COURT: Okay. I depend on lawyers to present the information to me. Now, today, I'm being presented for the first time verbally, that there is no good faith—

MR. KEANE: Uh-huh (affirmative).

THE COURT: ... *And—and it's been six months, okay? In the meantime, Mr. Woodall and his co-counsel have had to come in here, they've had to submit affidavits and they've had to do a lot of unnecessary work.*

(Emphasis added.) This exchange clearly evidences the district court's frustration with Keane's conduct. The court was particularly concerned about the length of time that it took for Keane to resolve the flaw in his original proposed order, the resulting delay and expenses incurred by Woodall and Woodall's co-counsel in having to pursue correction of that proposed order, and the overall waste of judicial resources. The court reiterated these concerns when it clarified at the conclusion of the hearing that it was awarding sanctions "based not on Rule 11, but based on the frivolous, unnecessary aspect of the proceedings up to this point, which seem to be continuing." The court's displeasure with Keane's conduct is also manifest in the court's finding that Keane acted in bad faith.

¶ 10 Both before the district court and on appeal, Keane attempts to shift the blame for his flawed proposed order to Allen, the attorney who appeared in Keane's place at the hearing on Woodall's motion to dismiss. Keane asserts that he relied on Allen's representations that the district court had made a finding of good faith in Maxwell's favor. Keane argues that it "seems manifestly unfair to impose liability on Keane where he acted in good faith on [Allen's] representations." However, the responsibility for ensuring that the proposed order was "in conformity with the court's decision" was Keane's, not that of a substitute attorney such as Allen. *See* Utah R. Civ. P. 7(f)(2). Moreover, Keane's responsibility included an obligation "to correct a false statement of material fact" previously made to the court. *See* Utah R. Prof'l Conduct 3.3(a)(1). That the district court was unable to fully resolve the factual discrepancy contained in Keane's proposed order until nearly seven months after Woodall filed his objection supports the court's use of its inherent sanction power against Keane. Furthermore, the facts and statements from the hearing transcripts de-

scribed above demonstrate that the court was concerned with how Keane's "actions interfered with the administration of justice and resulted in wasted time and effort by opposing counsel." *See Barnard,* 855 P.2d at 249. We therefore conclude that the district court acted within its discretion by awarding attorney fees under its inherent sanction power in order to compensate Woodall for the delay, inconvenience, and expense resulting from Keane's conduct. *See Griffith,* 1999 UT 78, ¶ 14, 985 P.2d 255.

■ ¶ 11 Woodall argues that pursuant to rule 33 of the Utah Rules of Appellate Procedure, Keane should be required to pay Woodall's attorney fees incurred in defending the district court's judgment on appeal. Rule 33 provides that if an appellate court determines that an appeal is frivolous, the court "shall award just damages" to the prevailing party, which may include costs and reasonable attorney fees. *See* Utah R.App. P. 33(a). While it is true we have previously held that "an appeal brought from an action which is properly determined to be in bad faith is necessarily frivolous under [rule 33]," "it does not follow that a frivolous action is an action in bad faith" that would equate to a frivolous appeal. *See Utah Dep't of Soc. Servs. v. Adams,* 806 P.2d 1193, 1197–98 & n. 6. (Utah Ct.App.1991). Here, the district court in its final order clarified that the fees were awarded "based on the frivolous nature of plaintiff's suit, together with a subsequent finding of bad faith on the part of" Keane. Even assuming that we agree with the district court's conclusion that Maxwell's complaint was frivolous—a determination we do not make—there was never a finding by the court that the complaint was brought in bad faith. Thus, Keane's appeal is not frivolous on this ground. Furthermore, we are not persuaded that Keane's argument that the attorney fees were awarded pursuant to Utah Code section 78B–5–825 is frivolous, although we ultimately reject that claim. Accordingly, Woodall is not entitled to attorney fees incurred on appeal under rule 33. Woodall also requests fees under the general rule that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal. *See Valcarce v. Fitzgerald,* 961 P.2d

305, 319 (Utah 1998). However, because the district court awarded attorney fees pursuant to its inherent sanction power stemming from Keane's conduct during litigation, and not pursuant to a rule, statute, or contract, we decline Woodall's request for attorney fees incurred on appeal on this ground. *See Liston v. Liston,* 2011 UT App 433, ¶ 27 n. 6, 269 P.3d 169.

¶ 12 Affirmed.