2019 UT App 47

# THE UTAH COURT OF APPEALS

COUGAR CANYON LOAN, LLC,
Appellee,
*v.*
THE CYPRESS FUND, LLC; CYPRESS MANAGEMENT, LLC;
OLYMPUS CAPITAL ALLIANCE, LLC; CYPRESS CAPITAL III, LLC;
ROBERT N. BAXTER; AND BLAIR M. WALKER,
Appellants.

Opinion
No. 20170413-CA
Filed March 28, 2019

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 130907106

Troy L. Booher, Clemens A. Landau, and Michael J.
Teter, Attorneys for Appellants

Jefferson W. Gross and S. Ian Hiatt, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

ORME, Judge:

¶1 Following a complicated series of transactions involving bridge lending,[1] Cougar Canyon Loan, LLC (Cougar) brought

---

1. A bridge loan is "[a] short-term loan that is used to cover costs until more permanent financing is arranged or to cover a portion of costs that are expected to be covered by an imminent sale." *Bridge Loan*, Black's Law Dictionary 1020 (9th ed. 2009). Bridge loans typically have terms of "up to one year, have relatively high interest rates and are usually backed by some form of

(continued…)

suit against The Cypress Fund, LLC; Cypress Management, LLC; Olympus Capital Alliance, LLC; Cypress Capital III, LLC; Robert N. Baxter; and Blair M. Walker (collectively, Cypress). Cougar alleged, among other things, violations of the Utah Uniform Securities Act, *see* Utah Code Ann. §§ 61-1-1 to -206 (LexisNexis 2018),[2] and breach of the implied covenant of good faith and fair dealing. Following a jury verdict in Cougar's favor on both counts, Cypress moved for a new trial, asserting that the verdict was "contrary to law," *see* Utah R. Civ. P. 59(a)(7), which motion the trial court denied. We affirm the trial court's denial of Cypress's motion for a new trial and further conclude that it did not err in holding Robert N. Baxter in contempt for transferring funds in violation of the court's order.

¶2      To make a long story short,[3] Cypress approached Cougar in 2009 about participating as co-lender on a loan associated with a real estate development project in Trinidad, Colorado (the Trinidad Project). Cypress had committed to loan $4.8 million[4]

---

(…continued)
collateral, such as real estate or inventory." *Bridge Loan Definition*, Investopedia, https://www.investopedia.com/terms/b/bridgeloan.asp [https://perma.cc/GXF7-UJQJ].

2. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

3. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 8 n.3, 372 P.3d 629 (quotation simplified).

4. For ease of reference, we often use approximations in this opinion when referring to dollar amounts.

for the funding of the Trinidad Project, and Cougar eventually agreed to finance half of that sum in exchange for a note from Cypress in the principal amount of $2.8 million. However, of the $4.8 million that Cypress had agreed to extend for the funding of the Trinidad Project, the project ultimately received only $1.7 million—$1.5 million of which Cougar funded. The Trinidad Project borrower eventually defaulted on the loan and, following a sequence of events, Cougar initiated the current action against Cypress on October 17, 2013, asserting securities fraud and other claims.

¶3    In bringing its claim for securities fraud against Cypress, Cougar alleged that Cypress "made untrue statements of material facts regarding the value and nature of the collateral that would be pledged" to secure Cougar's loan and "made untrue statements of material facts regarding [Cougar's] approximately 50/50 participation in the [Trinidad Project loan]."

¶4    Following a four-day trial in 2017, the jury returned a special verdict in favor of Cougar on its securities fraud and breach-of-the-implied-covenant claims, awarding $4 million and $1 million in damages, respectively. Because the damage awards were duplicative, the trial court entered judgment in favor of Cougar in the sum of $4 million, plus postjudgment interest, costs, and attorney fees. Cypress subsequently filed post-trial motions seeking judgment notwithstanding the verdict, a new trial, and to set aside the judgment. *See* Utah R. Civ. P. 50, 59, 60(b). The trial court denied the motions, and Cypress appeals.

¶5    At oral argument, Cypress's appellate counsel, who was not trial counsel, astutely recognized that the briefing in this case was unfocused and unduly complex. Counsel accordingly repackaged Cypress's position on appeal to showcase a single potentially dispositive argument: that the trial court erred in denying Cypress's rule 59 motion for a new trial because the

verdict was "contrary to law."[5] *See id.* R. 59(a)(7). Specifically, he argued that the two-year statute of limitations barred Cougar's securities fraud claim. *See* Utah Code Ann. § 61-1-22(7)(a)(ii) (LexisNexis 2018) (providing that a claim brought under the Utah Uniform Securities Act is barred after "the expiration of two years after the discovery by the plaintiff of the facts constituting the violation").

¶6 Cypress premises its argument on Cougar's receipt of two emails more than two years before Cougar brought suit. In March 2009, Cypress sent an email to Cougar detailing issues with some of the collateral securing the loan. And in March 2011, Cypress sent an email detailing the parties' current percentage interest in the Trinidad Project loan, which was not 50/50. The 2011 email was sent to an administrative assistant,[6] but Richard Miller, the owner of the entity that manages Cougar, never reviewed it. Cypress argues that the emails conferred sufficient

---

5. In its briefing, Cypress raised a number of issues dealing with Cougar's breach-of-good-faith-and-fair-dealing claim. As both parties have recognized, the $1 million jury award on that claim was duplicative of the $4 million award on Cougar's securities fraud claim. Accordingly, we would address Cypress's good-faith-and-fair-dealing arguments only if we took issue with the jury's securities fraud verdict, which we do not, as hereinafter explained.

6. The parties hotly dispute the role this employee played at Cougar. Cougar asserts that she was an "administrative assistant" who lacked the "requisite background understanding of the transaction" and therefore "did not understand [the email's] import." Conversely, Cypress contends that her knowledge was corporate knowledge because "[s]he was an accountant" who "regularly sent emails in which she revealed her expertise and substantive role in managing the loan." In view of our resolution of the appeal, the distinction proves to be unimportant.

actual or inquiry notice upon Cougar to trigger the running of the two-year statute of limitations for its securities fraud claim, which would have elapsed by the time Cougar commenced its action in October 2013.

¶7 Ordinarily, "we review an appellant's allegations of legal error under [rule] 59(a)(7) [of the Utah Rules of Civil Procedure] for correctness," but "reverse and order a new trial only if we (1) identify a legal error that would be grounds for a new trial under [rule] 59(a)(7) and (2) determine that the error resulted in prejudice necessitating a new trial." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 23, 309 P.3d 201 (quotation simplified). But this issue was not preserved for appeal by trial counsel.

¶8 Although a party may advance a new argument in its motion for a new trial, "the trial court may refuse to consider the merits of the argument because it may find the issue waived." *State v. Pinder*, 2005 UT 15, ¶ 46, 114 P.3d 551 (quotation simplified). And should the trial court "refuse[] to address the merits of the newly advanced argument, the issue remains unpreserved for appellate review and may be addressed only if the challenging party can show plain error or exceptional circumstances." *Id. See also Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 30, 163 P.3d 615 (stating that raising an issue in a post-trial motion does not cure preservation defects); *Clark Props., Inc. v. JDW–CM, LLC*, 2012 UT App 163, ¶ 9, 282 P.3d 1009 ("Insofar as [the appellant] suggests that it preserved [a] claim by raising it in its motion for new trial, that fact *alone* is inadequate to preserve an issue for appellate review.") (emphasis added).

¶9 In the present case, the trial court addressed Cypress's multiple post-trial motions in a single memorandum decision. In denying Cypress's motion for a new trial, the court briefly addressed Cypress's argument based on the sufficiency of the evidence, *see* Utah R. Civ. P. 59(a)(6), by stating that the argument failed because Cypress had not marshaled the

evidence supporting the jury's verdict. The court made no specific mention of Cypress's contention that the verdict was "contrary to law," *see id.* R. 59(a)(7), other than to state that Cypress failed to cite to the record where it had preserved its remaining issues—thereby implicitly refusing to reach the merits of that specific argument. And because "courts are required to explain the basis for their decisions only when they *grant* motions for a new trial—not when they deny such motions," *ASC Utah*, 2013 UT 24, ¶ 21 (emphasis in original), the court did not commit legal error in declining to address the merits of that particular argument. Cypress's rule 59(a)(7) argument is therefore unpreserved for appeal.

¶10 We typically review unpreserved issues only when a valid exception to the preservation rule applies. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. Cypress contends that the plain error doctrine applies to its rule 59(a)(7) argument. To establish plain error, a defendant must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Id.* ¶ 20 (quotation simplified).

¶11 Cypress argues that the trial court plainly erred by failing to properly instruct the jury regarding the two-year statute of limitations applicable to Cougar's securities fraud claims. Specifically, Cypress contends that the court should have instructed the jury "that Cougar is imputed to know or ought to know that which its agent [i.e., the administrative assistant] knows or ought to know." Because we conclude that any alleged error in the jury instructions was not "obvious to the trial court," Cypress has failed to carry its burden of establishing plain error.[7]

---

7. Because Cypress has failed to show that the alleged error "should have been obvious to the trial court," *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified), we do not address the merits of Cypress's rule 59(a)(7) argument nor the extent to which the alleged error prejudiced Cypress, *see id.*

¶12 The jury was given the following instruction, approved by Cypress at trial, regarding Cypress's statute of limitations defense:

> The statute of limitations governs the amount of time in which a party may bring a claim after the discovery of that claim. For securities fraud, the statute of limitations is two (2) years. [Cougar] filed its complaint on October 17, 2013. If you find that [Cougar] knew of the alleged securities fraud before October 17, 2011, you must find that [Cougar's] securities fraud claim fails in violation of the statute of limitations.

Cypress argues that this instruction was insufficient because "[t]he jury could do nothing with the statute of limitation instruction and undisputed facts without being told, as well, that an agent's knowledge is imputed to the corporation."[8] Citing *State v. Dean*, 2004 UT 63, 95 P.3d 276 (amended opinion), Cypress contends that the erroneous omission of this additional instruction should have been obvious to the trial court because "the law governing the error was clear at the time the alleged error was made." *Id.* ¶ 16.

---

8. Cypress does not address how this jury instruction was insufficient or erroneous as concerns the 2009 email in which it purportedly brought the issues surrounding some of the collateral to Cougar's attention. Instead, it asserts that the email in and of itself was sufficient to trigger the running of the statute of limitations, as a matter of law. But this was a factual question that was directly addressed by the jury that, by rejecting Cypress's statute of limitations defense and returning a verdict in favor of Cougar, necessarily found that the email did not confer sufficient actual or inquiry notice upon Cougar that fraud was afoot.

¶13 To the extent that the trial court erroneously instructed the jury regarding the statute of limitations and that error resulted in a verdict that was contrary to law, such error would have been far from obvious to the trial court given Cypress's conduct at trial. Cypress never proposed the instruction that it now faults the trial court for not providing, nor did it object to the manner in which the court instructed the jury concerning the statute of limitations. To the contrary, Cypress not only stipulated to the relevant jury instruction but requested it.[9] Moreover, Cypress has not directed us to anything in the record that shows it alerted the court to its statute of limitations argument based on the administrative assistant's receipt of the 2011 email. Prior to trial, Cypress never moved the court for summary judgment based on its discovery of the 2011 email. Nor, following the conclusion of Cougar's case-in-chief, did Cypress move the court for judgment as a matter of law pursuant to rule 50 based on its statute of limitations argument.[10] *See* Utah R. Civ. P. 50(a). Indeed, the 2011 email was never even admitted into evidence at trial—it was only briefly alluded to during the direct- and cross-examination of Richard Miller, the owner of the entity that manages Cougar.

¶14 Against this backdrop, Cypress fails to address how the existence of the 2011 email and its allegedly dispositive legal implications should have been obvious to the trial court. Given

---

9. The error, then, was not only not obvious but may also have been invited. *See generally Kerr v. Salt Lake City*, 2013 UT 75, ¶ 44, 322 P.3d 669 ("The invited error doctrine prevents a party from taking advantage of an error committed at trial when that party led the trial court into committing the error.") (quotation simplified).

10. At oral argument, Cypress clarified that, in making its rule 59(a)(7) argument, it relied exclusively on evidence presented by Cougar at trial, thus avoiding any duty to marshal the evidence supporting the verdict in making its argument.

how the case was tried, there was nothing in the parties' course of conduct to suggest to the court that an error had occurred, plain or otherwise. Quite the opposite, Cypress's conduct and stipulation to all of the jury instructions would have lulled the court into a sense that the trial was moving forward as it should, pending ultimate resolution by a properly instructed jury. Despite this, Cypress basically asserts that the court should have, on its own initiative, realized that an email that was never entered into evidence and was only fleetingly mentioned in the course of a four-day trial merited an additional jury instruction. We conclude that such a scenario would have been anything but obvious to the trial court. Cypress has therefore failed to establish plain error.

¶15 As a final point on appeal,[11] Robert N. Baxter, one of the principals of Cypress Capital III, LLC, argues that the trial court abused its discretion in holding him in contempt. *See* Utah Code Ann. § 78B-6-301(5) (LexisNexis 2018). "When reviewing a [trial] court's decision to find a party in contempt, we review the [trial] court's findings of fact for clear error and its legal determinations for correctness." *Rosser v. Rosser*, 2019 UT App 25, ¶ 9 (amended opinion) (quotation simplified).

¶16 Following the jury verdict and during the pendency of Cougar's motion for attorney fees, the trial court granted a stipulated motion (the Stay Order) that, among other things, prohibited any of the Cypress parties from "(i) engaging in transactions outside the ordinary course of their business and (ii) transferring any of the judgment debtors' assets." Nonetheless, a few weeks following entry of the Stay Order,

---

11. Cypress seeks an award of attorney fees on appeal. "Ordinarily, we award appellate attorney fees and costs when a party was awarded fees and costs below and then prevails on appeal." *Tobler v. Tobler*, 2014 UT App 239, ¶ 48, 337 P.3d 296. Because Cypress was not awarded fees below and has not prevailed on appeal, we deny its request for attorney fees.

Baxter transferred $230,000 out of one of his and his wife's joint money market accounts to a recently formed company owned by his wife, Sprout Funding Partners, LLC. After Cougar learned of the transfer, it sent a letter to Cypress advising that it would seek contempt sanctions against Cypress unless the transferred funds were paid over to Cougar. Baxter, his wife, and their company, Baxter Properties, LLC, then filed a motion to interplead $115,000 of the transferred funds and sought a determination that the funds belonged to Baxter Properties—and not to the Baxters. Cougar subsequently filed a motion seeking a contempt determination against Baxter. Following an evidentiary hearing on both motions, the trial court determined that the transferred funds belonged to the Baxters—not Baxter Properties—and, pursuant to Utah Code section 78B-6-301(5), held Baxter in contempt for his violation of the Stay Order.

¶17　Generally, "to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *LD III, LLC v. BBRD, LC*, 2013 UT App 115, ¶ 14, 303 P.3d 1017 (quotation simplified). Baxter does not challenge the trial court's determination that he knew of and had the ability to comply with the Stay Order. Rather, he argues that the trial court erred in finding that the transferred funds did not belong to Baxter Properties.

¶18　Baxter correctly recognizes that, at the evidentiary hearing, he bore the burden of rebutting, by clear and convincing evidence, the presumption that funds in a bank account belong to the owners of that account. *See Peterson v. Peterson*, 571 P.2d 1360, 1362 (Utah 1977). But instead of discussing the evidence supporting the trial court's finding that he failed to overcome the presumption that the transferred funds belonged to him, Baxter highlights the evidence that supports his contention that the funds belonged to Baxter Properties. He argues that this "evidence clearly and convincingly demonstrate[d] that the $230,000 on deposit in the account was

the property of Baxter Prop[erties]." Because Baxter has not "adequately marshaled the evidence" or "otherwise . . . carr[ied] [his] burden in demonstrating clear error,[12] we presume that the evidence supports the trial court's finding" that the transferred funds belonged to him and his wife. *See Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 17, 427 P.3d 571. *See also State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645 ("[A] party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal [the evidence]."). We therefore conclude that the trial court did not err in holding Baxter in contempt.

¶19    Cougar requests an award of attorney fees incurred on appeal. "A party entitled by contract or statute to attorney fees below and that prevails on appeal is entitled to fees reasonably incurred on appeal." *Federated Capital Corp. v. Abraham*, 2018 UT App 117, ¶ 15, 428 P.3d 21 (quotation simplified). The trial court, pursuant to Utah Code section 61-1-22, awarded Cougar reasonable attorney fees incurred in pursuing its securities fraud claim against Cypress. *See* Utah Code Ann. § 61-1-22(1)(b) (LexisNexis 2018). Because Cougar has prevailed on appeal, we award Cougar reasonable attorney fees incurred in defending the jury's verdict on appeal. Additionally, as part of its contempt order against Baxter, the trial court awarded Cougar attorney fees "in connection with the filing of [Cougar's] Motion regarding contempt and in responding to the [Baxters'] Motion to Interplead." Because those fees were awarded as a sanction, *see Gardner v. Gardner*, 2012 UT App 374, ¶ 32, 294 P.3d 600

---

12. In noting that Baxter focuses on the evidence supporting his contention rather than on the evidence supporting the trial court's finding, and in concluding that Baxter has thus not carried his burden of persuasion, we imply no criticism of counsel. Very often such an approach simply reflects counsel's considered opinion that diverting the appellate court's attention from that evidence is more likely to lead to success on appeal than focusing on it, especially if such evidence is strong.

(holding that attorney fees awarded as a result of contemptuous behavior are sanctions), "we decline [Cougar's] request for attorney fees incurred on appeal" in defending the order of contempt entered against Baxter "on this ground," *Maxwell v. Woodall*, 2014 UT App 125, ¶ 11, 328 P.3d 869. *See also Liston v. Liston*, 2011 UT App 433, ¶ 27 n.6, 269 P.3d 169 (denying an award of attorney fees on appeal because the district court awarded the fees as "a sanction for [Appellant's] conduct during litigation").

¶20 In conclusion, we affirm the trial court's denial of Cypress's motion for a new trial because any alleged error regarding the two-year statute of limitations instruction could not have been "obvious" to the trial court given Cypress's conduct during trial. We also affirm the court's order holding Baxter in contempt given Baxter's failure to establish that the trial court clearly erred in finding that the transferred funds belonged to the Baxters. We remand for the limited purpose of determining reasonable attorney fees incurred by Cougar in connection with defending the jury's verdict on appeal.

———